UNITED STATES of America,
Appellee,

v.

I. H. HAMMERMAN, II, Appellant.

No. 75–1090.

United States Court of Appeals,
Fourth Circuit.

Argued July 8, 1975.

Decided Oct. 29, 1975.

Sidney S. Sachs, Washington, D. C. (Hal Witt, David M. Dorsen, Robert S. Erdahl, Sachs, Greenebaum & Tayler, Washington, D. C., on brief), for appellant.

Peter M. Shannon, Jr., Atty., U. S. Dept. of Justice (John C. Keeney, Acting Asst. Atty. Gen. of Maryland, Jervis S. Finney, U. S. Atty., and Jerome M. Feit, Atty., U. S. Dept. of Justice, on brief), for appellee.

Before CRAVEN, BUTZNER and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

Appellant I. H. Hammerman, II, pleaded guilty to an information charging obstruction of the enforcement of the tax laws of the United States, 26 U.S.C. § 7212(a). From a sentence to a term of imprisonment of 18 months and a fine in the amount of $5,000, he appeals on the ground, *inter alia,* that he was misled by the prosecutors to believe that the district court would honor their recommendation that he not be imprisoned. We agree, and accordingly conclude that his plea was involuntary. We therefore reverse and remand with instructions that Hammerman be allowed to plead over.

## I.

In September 1973 Hammerman made the best he could of a bad situation. By written agreement he aligned himself with the United States Attorney for the District of Maryland against the incumbent Vice President of the United States, Spiro Agnew. It was not an easy decision. Indeed, the United States Attorney later spoke of the "enormity of the decision" to "provide testimony against a man of great political power and public influence" who was not above attempting to intimidate the prosecutors and who, before his fall from power, characterized on national television witnesses against him "as 'liars' and 'small men willing to do anything to save their own skins.'"[1]

1. United States Attorney George Beall made these statements at Hammerman's sentencing. App. 33–34.

The agreement between the United States and Hammerman provided that he would plead guilty to a violation of 26 U.S.C. § 7212 (obstruction of the enforcement of the tax laws of the United States) and that he would cooperate fully and truthfully in the prosecution of Vice President Agnew and others. The *quid pro quo* was that the United States Attorney promised that no further criminal charges would be brought against Hammerman and that his cooperation would be brought to the attention of the court in an affirmative way at sentencing.

Thereafter the situation changed startlingly. The Vice President resigned his office in disgrace and on the same day entered a plea of nolo contendere to a charge of violating 26 U.S.C. § 7201. He was sentenced to three years of unsupervised probation and a fine of $10,000. The factual basis for the court's acceptance of the Vice President's plea was based in large part on an October 9, 1973, affidavit by Hammerman specifying his role as bagman for Agnew.

Because of the leniency accorded Agnew, the United States Attorney of Maryland reviewed Hammerman's case and concluded that it would be inappropriate to punish one who truthfully cooperated in the investigation more severely than the "Target," *i. e.,* the Vice President. Although the September agreement with Hammerman did not commit the United States Attorney to make a recommendation as to sentence, he nevertheless concluded that he ought to do so.[2] Indeed, the United States Attorney was so concerned that Hammerman should not be treated more harshly than the principal offender that consideration was given to dismissing the case against him. Instead, it was decided that it would be best to proceed, for the purpose of revealing all that was known to the public, but to do everything possible to assure leniency equal to that accorded Agnew. To the end of assuring acceptance of a recommendation of no incarceration, the filing of charges and entry of a plea were delayed.[3] Also, *prior to the time that charges actually were filed,* appellant and the government requested an in-chambers conference[4] with

---

2. At the sentencing proceedings, United States Attorney Beall cited among the government's reasons for this recommendation: (1) the wide and unexpectedly sudden publicity given to the intimate details of Hammerman's involvement in criminal activities in a context where, unlike Agnew, appellant could not tenably continue to maintain his innocence; (2) the prosecution's feeling that the initial inducement to appellant was the expectation that he would receive no worse treatment than Agnew, who had received no prison term; and (3) a policy determination by the United States Attorney's office that the continued success of white collar criminal prosecutions depended upon the ability of the government to point to a record of better treatment for cooperating witnesses than for the "targets" of the investigation themselves. These considerations caused the United States Attorney's office to consider bringing no criminal charges against Hammerman and produced substantial internal debate on that proposal before it was rejected.

3. Information concerning this action was provided on appeal through an affidavit of appellant's counsel, Hal Witt, which was filed by appellant in support of its motion in the court of appeals to remand for an evidentiary hearing. That motion to remand was denied, and

appellant included the affidavit filed therein in the appendix to the instant appeal.

It is agreed that this affidavit is not part of the record on appeal. However, the government, in neither its brief nor oral argument, questioned the essential accuracy of this account of the circumstances and events which led up to Hammerman's guilty plea.

4. According to his affidavit, Mr. Witt understood from the United States Attorney's office that the purpose of the conference was to inform

the court that the United States Attorney's office would vigorously recommend that appellant not be sentenced to jail, and for the purpose of agreeing upon procedures which would best accomplish that end and seeking an indication from the court as to whether it would follow the United States Attorney's recommendation.

App. 109.

The court understood the purpose differently: "The purpose of the conference, as we understood it, was to try to persuade the Court to minimize the publicity by having the filing of the information, the arraignment and the sentencing on the same day." App. 93.

the three judges who had been designated to handle Hammerman's guilty plea.[5]

At this conference held on October 11, 1974, United States Attorney George Beall presented the government's affirmative argument that imprisonment would be inappropriate[6] in this case.[7] Also, the timing of the arraignment and sentencing was discussed for the purpose of avoiding the appearance of a "cut and dried" procedure and the creation of excessive publicity.[8]

By affidavit filed in this court, counsel alleges that:

Immediately following the conference on October 11, 1974, one of the prosecutors stated to appellant's counsel his firm belief that the court had given the desired indication that it would accept the United States Attorney's recommendation by all that had occurred, and particularly by saying that it wanted to avoid the appearance of a "cut and dried" proceeding. He said he was sure that the court would

---

5. At sentencing United States District Court Judge Roszel C. Thomsen, after reciting the history of the appointment of a judge from outside the District of Maryland to handle the Agnew case, gave the following explanation of the use of a panel of three judges in these proceedings:

Thereafter, Chief Judge Northrop was advised by the United States Attorney that criminal proceedings would be instituted against I. H. Hammerman, II, and Allen I. Green, as a result of their participation in the matters set out in the 40 page statement filed by the United States Attorney in the Agnew case. Most of the judges of our Court stated that for one reason or another they felt that, even though they might not be disqualified, they should not participate in those cases. After a full discussion, the judges of our Court designated Judge Young, Judge Murray and me or any one or more of us to preside in any such proceeding which might be brought against Hammerman or Green, and concluded that all three of us should sit if we were advised that guilty pleas would be offered. The reason for this unusual procedure was that these cases are so intimately related to the Agnew case, which was unique in the history of our country, and which our judges had already treated as such. It is not intended as a precedent for the use of three judges in any future criminal case unrelated to the Agnew matter.

In his appeal Hammerman attacks, as without legal basis, the use of a panel of three judges in a criminal proceeding of this type. Our disposition of the appeal on another ground makes decision of that claim unnecessary, but we do not wish our silence to be taken as approval of the practice. Ordinarily, no good is served by convening a court of more than one district judge except where a question of district-wide law or policy may be settled or where some exceptional reason, which we do not find explicated in the record in this case, is present.

6. Amended Rule 11 specifically authorizes the prosecutor and defense lawyer to "agree that a specific sentence is the appropriate disposition of the case." Fed.R.Crim.P. 11(e)(1)(C). The rule, however, prohibits a court from participating in any discussions leading to the agreement.

7. No record of this conference was made. However, appellants offered under Rule 10(c) of the Federal Rules of Appellate Procedure a "Statement of Proceedings When no Report Was Made." (Hereinafter Statement of Proceedings.) The government agreed that this statement was a "substantially accurate summar[y] of the events described therein, and that the inaccuracies, if any, are without apparent significance to the legal issues being raised in Mr. Hammerman's appeal." App. 91.

The district court disapproved of this statement as (a) inaccurate in that many of the statements, although made in substantially similar language, "omit qualifying words or comments and the context in which they were made," App. 93, and (b) not the record of any "hearing or trial" within the meaning of Rule 10(c).

Both the Statement of Proceedings and the order of disapproval were certified to the court of appeals as part of the record on appeal.

8. In giving its reasons for disapproving the "statement of proceedings," the district court agreed that the "cut and dried" language had been used by a member of the court but disputed the context of the statement:

[W]hen the prosecutors and counsel for defendants asked that the arraignment and the sentencing be on the same day, the Court refused, saying that such procedure would look cut and dried, whatever the result.

App. 93. Identical language was used by the court in its Order Sur Application for Extension of Time for Transmission of Record (hereinafter Order Sur Application).

not have talked in those terms if it were not planning to follow the United States Attorney's recommendation. He stated, specifically or in substance, and most emphatically, that the court had given the "signal" which counsel had been seeking.[9]

The government at no time in its response to the Statement of Proceedings[10] or in its brief or at oral argument denied that the statement as recited by appellant was made by "an assistant-prosecutor."[11] We thus treat the uncontradicted affidavit as establishing an agreed fact—one known to the parties only and beyond the cognizance of the court.

At arraignment on November 11, Mr. Beall made an affirmative recommendation that Hammerman's sentence not include any incarceration and notified the court that a detailed statement in support of the government's position would be provided at sentencing. The court noted that it would give consideration to that recommendation but was not bound by it. After inquiring as to whether there were any other agreements, understandings, or inducements,[12] and being told that there were none, the court accepted Hammerman's guilty plea.

Sentencing took place on November 25. In open court United States Attorney Beall spoke eloquently and at length and urged, indeed, pleaded with the court that Hammerman not be incarcerated. Based on the ground that a failure to impose a sentence of confinement would "unduly depreciate the seriousness of the offense," the court sentenced Hammerman to a term of imprisonment of 18 months and a fine of $5,000.

Hammerman appeals from this sentence and seeks in the alternative either the specific enforcement of the plea bargain, including the prosecutor's assurance of acceptance by the court of the suspended sentence recommendation, the setting aside of his waiver of indictment, guilty plea and sentence, or the ordering of an evidentiary hearing on the substance of this claim.

## II.

Hammerman claims that he was misled by the statement of a prosecutor after the October 11 pre-plea conference into believing that the court had accepted the government's recommendation that he not be sentenced to prison. That statement expressed the "firm belief" of the prosecutor that the court had given counsel the "signal" he wanted, i. e., that the court would follow the United States Attorney's recommendation.

We view the prosecutor's prediction as likely to inculcate belief and reliance and therefore an essential element of the plea bargain. That the prosecutor lacked the power to imple-

---

9. Appellant argues that a "multitude" of "signals" were given during this proceeding which indicated the court's acceptance of the government's recommendation that Hammerman not be sentenced to a term of imprisonment. The district court, in its order disapproving the Statement of Proceedings, asserted that no objective indications to that effect were given during this proceeding: "The Court said nothing which could reasonably have led defendant's counsel (or defendant, who was not there) to believe that the defendant would receive a suspended sentence." Almost identical language is found in the Order Sur Application. We cannot, because of the state of the record, evaluate that conflict and need not do so because statements by the prosecution subsequent to that hearing superseded the actual events of the hearing and rendered them simply background to the primary misrepresentation by the government.

10. See note 7, supra.

11. Brief for Appellee at 27 n.16.

12. Judge Young, who questioned Hammerman at arraignment, asked if other agreements or understandings of inducements existed between Hammerman and the government. Appellant answered in the negative. However, he was not asked, as Judge Murray asked defendant Allen Green at his arraignment immediately following Hammerman's, whether any prediction had been made concerning the sentence that would be imposed. (Green was charged in a companion case with violating 26 U.S.C. § 7212(a) in connection with payments made by him to Agnew in order to obtain state contracts.)

ment the prediction made it an "unfulfillable" promise condemned by *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). *See Correale v. United States,* 479 F.2d 944, 947 (1st Cir. 1973); *Walters v. Harris,* 460 F.2d 988, 992 (4th Cir. 1972), *cert. denied,* 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973). It does not matter that the prediction or promise was made in good faith; what matters is it was probably relied upon, was not fulfilled and was unfulfillable. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *Correale v. United States, supra.*

■ Nor does it matter that only one assistant prosecutor made the representation in question. In plea bargaining arrangements it is the responsibility of lawyers in the prosecutor's office to let " 'the left hand know what the right hand is doing' or has done." *Santobello, supra* at 262, 92 S.Ct. at 499; *Walters v. Harris, supra* at 992; *United States v. Carter,* 454 F.2d 426, 427–28 (4th Cir. 1972), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974). *See also Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

As United States Attorney Beall stated at the sentencing hearing, the inducement to Hammerman from the beginning "was the expectation that [he] would be treated no worse than the person against whom [he] furnished helpful testimony,"[13] and the probationary sentence subsequently given Agnew supplied definition of the inducement, *i. e.,* suspension of any sentence imposed. Finally, the statement in question by the assistant prosecutor gave assurance that the bargain desired by both the government and appellant Hammerman had been accepted by the court.

■ Properly viewed there was, therefore, only one plea bargain, the last element of which was false confirmation by an assistant prosecutor that the terms had been accepted by the court. One month after the final formulation Hammerman entered his plea of guilty. On these facts, we find that the statement of the assistant prosecutor confirming acceptance of the plea bargain formed a significant part of the inducement for the guilty plea. As we held in *Walters v. Harris, supra* at 991–92, an assurance that the defendant would receive a particular sentence, an assurance not within the power of the prosecutor to make, is a promise that cannot be kept, and such an unkept bargain which has induced a guilty plea is grounds for relief. *Santobello, supra.*

At arraignment Mr. Hammerman was asked whether there were any other understandings or commitments by the government. He responded negatively. We have held that even where the answer to such an inquiry denies the very existence of a plea bargain, it is not to be considered conclusive against such claim. We recognized the real possibility that fear that a truthful response might jeopardize the bargain may well produce an answer that is false. *Crawford v. United States,* 519 F.2d 347 (4th Cir. 1975); *Walters v. Harris, supra* at 993.

■ In view of the assistant prosecutor's statement, the pressures here for silence rose far above those in the typical case. The message of that communication was that the court had covertly agreed to accept the United States Attorney's recommendation, and therefore any admission that assurances had been given would divulge judicial participation and thereby jeopardize the understanding. We find that under these circumstances Hammerman's denial of any inducement or commitment leaves untouched our determination that the assistant prosecutor's misrepresentation induced the plea.[14] *Compare Edwards v. Garrison,* 529 F.2d 1374 (4th Cir. 1975).

---

13. App. 42.

14. We do not decide whether a different result would obtain if Hammerman had been asked as Green was if "any predictions [have] been made . . . that the Court would impose any particular sentence in this matter?"

### III.

The Supreme Court in *Santobello, supra,* left open the question of appropriate relief where the plea bargain is breached. In that case, it remanded to the state court, leaving to that court's discretion the determination of whether the circumstances of the case required specific performance or alternatively the opportunity to withdraw the guilty plea. 404 U.S. at 262, 92 S.Ct. 495. *See also United States ex rel. Culbreath v. Rundle,* 466 F.2d 730, 735 (3d Cir. 1972).

■ We think that appropriate relief for Hammerman is to let him withdraw his plea. It is the prosecution's misrepresentation that flaws his plea because the district court promised Hammerman nothing. There is thus no bargain which can be enforced.[15] This is not a case where the prosecution promised there would be no further criminal process—something within its power to control. In such instances, enforcement of the bargain has been found appropriate. *See United States v. Carter, supra* at 427–28; *United States v. Paiva,* 294 F.Supp. 742 (D.D.C.1969).

■ We believe the relief granted in this case is consistent with the approach followed by this and other circuits in determining "what is reasonably due in the circumstances." *Santobello, supra,* 404 U.S. at 262, 92 S.Ct. at 499; *United States v. Brown,* 500 F.2d 375, 378 (4th Cir. 1974); *Correale v. United States, supra* at 950. It accords with the remedy contemplated under newly amended Rule 11(e)(4) of the Federal Rules of Criminal Procedure.[16] Under that rule, the court, if it decides to reject a plea agreement, must inform the defendant of that fact and allow him the opportunity to withdraw his plea.

■ We decline appellant's request that he be allowed to withdraw his waiver of indictment. Such a waiver—nothing more than a waiver of a finding of probable cause—is of relatively little consequence as compared with waiver of trial, and is not deserving of the protection surrounding entry of a guilty plea which has been described as "perhaps the most devastating waiver possible under our Constitution." *Dukes v. Warden,* 406 U.S. 250, 258, 92 S.Ct. 1551, 1555, 32 L.Ed.2d 45 (1972) (Stewart, J., concurring). *See also Bartlett v. United States,* 354 F.2d 745, 749 (8th Cir.), *cert. denied,* 384 U.S. 945, 86 S.Ct. 1471, 16 L.Ed.2d 542 (1966).

We remand with instructions that appellant be allowed to withdraw his guilty plea. Any further proceedings should be conducted by a single district judge who has not participated in the prior proceedings, and we so direct. *Cf. Santobello, supra; United States v. Brown, supra; Mawson v. United States,* 463 F.2d 29, 31 (1st Cir. 1972). If an indifferent judge is not to be found within the district,[17] the chief judge should request the assignment of a judge from outside the district.

*Reversed and remanded with instructions.*

---

15. We reiterate that we do not question the conclusion of the district court that it "said nothing which could reasonably have led . . . defendant . . . to believe that [he] would receive a suspended sentence." *See* note 9, *supra.*

16. This amendment was enacted on August 2, 1975. It becomes effective on December 1, 1975. 17 Crim.L.Rep. 3215 (1975).

17. *See* note 5, *supra.*