David BACKMAN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–1520, 85–498.

District of Columbia Court of Appeals.

Argued April 10, 1986.
Decided Oct. 24, 1986.

George A. Teitelbaum, Washington, D.C., appointed by the court, for appellant.

Mary Incontro, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, and Keith A. O'Donnell, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before PRYOR, Chief Judge, and FERREN and ROGERS, Associate Judges.

PER CURIAM:

On July 31, 1984, appellant Backman pled guilty to possession with intent to distribute heroin. D.C.Code § 33–541(a)(1) (1986 Supp.).[1] Pursuant to the mandatory minimum sentencing provision, *id.* § 33–541(c)(1), Backman was sentenced to a prison term of four to twelve years. Renewing the same argument he raised before the sentencing judge, Backman claims that, as a cocaine addict, he is eligible for waiver of the mandatory minimum sentencing requirement because he falls within the addict exception. *See id.* § 33–541(c)(2).[2] After reviewing the statute and its legislative history, we must agree with the trial court that Backman was ineligible for a § 33–541(c)(2) waiver of the minimum four-year sentence under § 33–541(c)(1).

I

In 1981, the Council of the District of Columbia adopted the Uniform Controlled Substances Act of 1981 (UCSA),[3] D.C. Law 4–52 (codified at D.C. Code §§ 33–501, –567 (1986 Supp.)), to combat the problems of drug abuse and drug dependence in the District. *See* Council of the District of Columbia, Report of Committee on Judiciary, D.C. Uniform Controlled Substances Act of 1981 at 1 (April 8, 1981) (Judiciary Comm. Report). The UCSA classifies the substances it controls into five categories called schedules. These schedules are primarily based upon the medical use of the substances, their potential for abuse, and

1. Appellant's conviction under the statute arose in connection with a sale to an undercover police officer.

2. In addition to filing a timely notice of appeal from his conviction, Backman also appealed from the trial judge's denial of his motion to modify or reduce the challenged sentence.

Both appeals have been consolidated into this one action.

3. The UCSA replaced the Uniform Narcotic Drug Act, D.C.Code §§ 33–501 *et seq.* and the Dangerous Drug Act for the District of Columbia, *id.* §§ 33–701 *et seq.*

their potential to produce psychological or physiological dependence. D.C. Code §§ 33–513, –515 (1986 Supp.). The penalty structure of the UCSA distinguishes between "those substances controlled under Schedule[s] I and II which are narcotics and those which are non-narcotics." Judiciary Comm. Report at 5.

In this regard, the UCSA amended the definition of "narcotic drug" to exclude cocaine. Judiciary Comm. Report at 18. *Compare* D.C. Code § 33–501(14) (1981) *with id.* § 33–501 (15) (1986 Supp.). The Council's decision to remove cocaine and any of its derivatives from the earlier statutory listing of narcotic substances was based upon the opinion of the medical community and the Drug Enforcement Administration that "[cocaine] is not a narcotic." Judiciary Comm. Report at 18. The result of this amendment was to punish cocaine abuse more leniently than narcotics abuse. *Compare* D.C. Code § 33–541(a)(2)(A), -(b)(2)(A) (1986 Supp.) *with id.* § 33– 541(a)(2)(B), -(b)(2)(B).

On June 7, 1983, District voters passed the Mandatory Minimum Sentencing Initiative of 1981. The intiative created several amendments to the UCSA, including those contained in D.C. Code §§ 33–541(c)(1) and (2) (1986 Supp.). Pursuant to § 33– 541(c)(1)(A), anyone convicted of possession with intent to distribute a Schedule I or II "narcotic drug" must serve a mandatory minimum sentence of not less than four years, whereas under § 33–541(c)(1)(B), anyone convicted of possession with intent to distribute "any other" substance classified under Schedule I, II, or III must serve a mandatory minimum sentence of not less than 20 months.

Under § 33–541(c)(2), known as the addict exception, a first-time offender of the UCSA may, in the sentencing court's discretion, be exempted from mandatory minimum sentencing if the court determines that the offender, who distributed or possessed with intent to distribute a Schedule I, II or III substance, was (1) an "addict" at the time of the violation and (2) committed the offense "for the primary purpose of obtaining a *narcotic* drug which he [or she] required for his [or her] personal use because of his [or her] addiction to such drug" (emphasis added).

In appellant's case, the conviction for possession with intent to distribute heroin, a Schedule I narcotic substance, triggered the mandatory sentencing provision of the UCSA. At the time of sentencing, however, Backman stated that he had sold the heroin to support his cocaine habit. He then invoked the addict exception to § 33– 541(c)(1)(A), claiming that, as a cocaine addict, he was eligible for possible waiver of the mandatory sentencing requirement.

The sentencing judge ruled that the statutory definition of an addict included only those individuals who were addicted to a *narcotic* substance. Since Backman was addicted to cocaine, a substance the UCSA classifies as a non-narcotic, the sentencing judge found him ineligible for waiver of the mandatory minimum sentencing provision.

## II

The voter initiative, which proposed the addict exception, defined an "addict" as "any individual who habitually uses any *narcotic* drug so as to endanger the public morals, health, safety, or welfare, or who is or has been so far addicted to the use of such *narcotic* drug as to have lost the power of self-control with reference to his [or her] addiction." D.C. Code § 33– 501(24) (1986 Supp.) (emphasis added). Backman challenges his exclusion from the addict exception of the UCSA, arguing that the statutory definition of an addict should be interpreted to include cocaine addicts. He reasons that the meaning of the word "narcotic" is ambiguous because the UCSA amendments were enacted through the voter initiative process, as contrasted with a bill enacted by the Council. He speculates that the District voters, as distinguished from the Council, intended the dictionary definition of narcotic—which, includes cocaine—rather than the statutory defini-

tion.[4] He also argues that to interpret the addict exception to exclude cocaine addiction leads to the anomalous result of denying cocaine addicts the possibility of drug rehabilitation counseling without incarceration—an alternative sentencing mechanism available to heroin addicts—even though the same statutory scheme sentences heroin abuse more severely than cocaine abuse.

■ We are unpersuaded by appellant's reasoning. The manner in which the statute was enacted has no bearing on interpreting the statute. We must hold the legislature and the citizenry to the same standards when interpreting the laws they enact. We must treat amendment by initiative the same as amendment by Council legislation, for once the District voters approve an initiative, it becomes an "act of the Council, ... and thus 'law' through the channel designated for the particular type of act adopted." *Convention Center Referendum Committee v. District of Columbia Board of Elections and Ethics,* 441 A.2d 889, 896–97 (D.C.1981) (en banc) (citations omitted).

When the District voters passed upon the 1981 initiative, they were instructed that the initiative was intended to amend certain portions of the pre-existing UCSA. Thus, they could be expected to use the UCSA as a reference point for any term that was not defined by the initiative itself. We must assume that the District voters relied on the statutory definition of "narcotic" in D.C. Code § 33–501(15) (1986 Supp.). In this instance, therefore, the plain language of the statute is dispositive. *United States v. Bailey,* 495 A.2d 756, 760 (D.C.1985) (citing *Peoples Drug Stores v. District of Columbia,* 470 A.2d 751, 753–54 (D.C.1983) (en banc). The initiative defined "addict" by reference only to a "narcotic drug." D.C. Code § 33–501(24) (1986 Supp.). Cocaine and its derivatives are specifically

excluded from this statutory definition. *Id.* § 33–501(15).

We observe that the exclusion of cocaine or any of its derivatives from the definition of narcotic substances was not the result of an oversight in drafting the statute. The legislative history of the UCSA shows that the Council consciously decided to remove cocaine from the earlier statutory listing of narcotic substances. The Council's decision was based upon the then prevailing medical and scientific opinion that cocaine was not a narcotic. *See* Judiciary Comm. Report at 18 & nn. 10, 11.

■ Given that appellant was allegedly addicted to cocaine, a substance the UCSA classifies as a non-narcotic drug, the sentencing judge was not empowered to invoke the addict exception to the mandatory minimum sentencing requirement.

### III

Appellant also raises an equal protection challenge to the sentencing scheme of the UCSA. He argues that there is no rational basis for distinguishing between addiction to cocaine and addiction to heroin when considering one's eligibility for the addict exception.

■ Since appellant does not claim that the statute's sentencing provision impinges upon a fundamental right or involves a suspect class, we can validly presume that statute's constitutionality. *City of New Orleans v. Duke,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). The statute will withstand appellant's challenge if its sentencing distinctions are rationally related to a legitimate state interest. *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961); *Wilson v. District of Columbia,* 338 A.2d 437, 438 (D.C.1975).

---

**4.** WEBSTER'S SEVENTH NEW COLLEGE DICTIONARY defines "Narcotic" as "1: a drug (as opium) that in moderate doses dulls the senses, relieves pain, and induces profound sleep but in excessive doses causes stupor, coma, or convulsions 2: something that soothes, relieves, or lulls." The same source defines "cocaine" as a "bitter, crystalline alkaloid $C_{17}H_{21}NO_4$ obtained from coca leaves and used as a narcotic and local anesthetic."

Our inquiry into the existence of a rational basis for the distinctions of the UCSA is limited to "whether any state of facts either known or which could reasonably be assumed affords support for it." *United States v. Thorne*, 325 A.2d 764, 766 (D.C. 1974) (quoting *United States v. Carolene Products Co.*, 304 U.S. 144, 153–54, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938)).

▮ At the time the addict exception to the UCSA was enacted, cocaine was not considered to be pharmacologically addictive. Hence, there was a rational basis for excluding cocaine users from a provision that was intended to benefit first-time offenders of the UCSA, who violated the statute because of their physical dependence on a narcotic substance. Apparently, the Council and District voters reasoned that these latter offenders would benefit from a sentencing mechanism that would include drug rehabilitation counseling as an alternative to incarceration.

Recently, there has been an increasing debate in the scientific community over the physiological and psychological effects of cocaine.[5] Some authorities opine that cocaine is pharmacologically addictive, while others maintain that it is not. In view of this scientific uncertainty, there is still some rational basis for the distinctions contained in the UCSA.

We are not free to disregard the constraints of the law in resolving this issue. The Council and District voters enacted the UCSA to combat the District's pervasive drug problem. Any need to revise the statute because of the hardships which appellant alleges are faced by cocaine addicts because of the drug's current classification under the UCSA must be addressed in the first instance, to the Council or the District

voters. Accordingly, appellant's sentence is

*Affirmed.*

FERREN, *Associate Judge*, concurring in the result:

I have a somewhat different approach from the majority to resolving the definition of "narcotic drug" in the addict exception adopted by voter initiative. I also believe the equal protection issue requires further elaboration.

### I.

The voter initiative did not necessarily have to define "narcotic drug," for purposes of the addict exception, in precisely the same way that this term is defined for other purposes in the UCSA. The voters, in accordance with a common, if incorrect, understanding, could have intended the term to mean, more broadly, all psychologically and pharmacologically addictive drugs. The problem is, the initiative itself did not define the term. Nor does the legislative history warrant a conclusion that the voters intended a definition of "narcotic drug" (drawn from a dictionary or any other source) that includes cocaine for purposes of the addict exception but not for other UCSA purposes.

Even if we assume, moreover, that the voters believed cocaine is addictive, we cannot further assume the voters necessarily intended to provide an addict exception with respect to all addictive drugs. The initiative itself provided different mandatory minimum sentences for possession with intent to distribute narcotic drugs (four years) and non-narcotic drugs (twenty months), respectively. This distinction must be said to reflect voter awareness of a fundamental difference between types of controlled substances, including an under-

---

5. Appellant urges that more recent scientific evidence suggests that cocaine may be more powerful than heroin, pointing to Marvin Snyder, the director of preclinical research at the National Institute on Drug Abuse, and to findings by a psycho-pharmacologist, Ronald K. Siegel, that cocaine is physically addicting; he also notes the clinical use of drug treatment of cocaine abusers which is similar to that used for heroin abusers, citing *Science Digest*, October 1984.

standing that cocaine is not a narcotic within the meaning of the UCSA. It would simply not make sense, therefore, to assume that the voters intended a different definition of "narcotic drug" in the provision for an addict exception from the definition on which they necessarily relied in adopting two categories of mandatory minimum sentences. Accordingly, the only sound inference is that the initiative incorporated the UCSA definition of "narcotic drug" for purposes of the addict exception.

## II.

I agree with my colleagues that, within the meaning of the equal protection clause, there is a rational basis for limiting the addict exception to users of narcotic drugs.

If there are plausible reasons for the legislative action, our scrutiny is "at an end," for the Supreme Court has never insisted that a legislative body articulate its reasons for enacting a statute. *United States R.R. Retirement Board v. Fritz,* 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980); *accord United States v. Thorne,* 325 A.2d 764, 766 (D.C.1974) (citing *United States v. Carolene Products Co.,* 304 U.S. 144, 153–54, 58 S.Ct. 778, 784–85, 82 L.Ed. 1234 (1938)). Nonetheless, although the people acting as a legislature need not give reasons for the addict exception to have a rational basis for it, *see Fritz,* 449 U.S. at 179, 101 S.Ct. at 461, there must be a "state of facts either known or which could reasonably be assumed affords support for it." *Thorne,* 325 A.2d at 766 (quoting *Carolene Products Co.,* 304 U.S. at 154, 58 S.Ct. at 784).

One such possibility—premised on the belief that cocaine and other non-narcotics in Schedules I and II are addictive—could be a rational decision to limit scarce rehabilitation resources to narcotic users, which are perceived (by reference to the mandatory minimum sentence provisions) as a more serious social problem.

Another possibility could be premised on evidence that could lead a legislature reasonably to conclude that proscribed non-narcotics, including cocaine, are not addictive, or at least are not addictive in the way and/or to the extent that narcotics are addictive. That distinction would reasonably justify a statutory exception permitting treatment of first-time narcotics users, but not other offenders, in lieu of mandatory minimum prison sentences—especially since narcotic users would otherwise be subject to four-year minimum prison sentences in contrast with the twenty-month minimums applicable to non-narcotic users.

This latter possibility has a demonstrable basis. Five years before the voter initiative at issue here, the Supreme Court of Alaska evaluated a constitutional attack on criminal laws prohibiting possession and sale of cocaine. *State v. Erickson,* 574 P.2d 1 (Alaska 1978). The defendants levelled equal protection and due process challenges to the classification of cocaine users with narcotic users under a statute banning use or sale of narcotic drugs. Basically, they argued that the statute was "over-inclusive" and "arbitrary" since cocaine was not a narcotic. *Id.* at 3. Agreeing with defendants to a point, the court found it was "undisputed that cocaine is not a narcotic under the pharmacological definition of the term." *Id.* at 7. Cocaine is a "stimulant" whereas a narcotic is a "depressant." *Id.* Moreover, the court acknowledged expert testimony of record, as well as other scientific sources, tending to prove that, although "cocaine can cause death as a direct effect of its pharmacological reaction," *id.* at 9, "[i]t is not physically addictive and is generally considered less harmful than heroin or alcohol." *Id.* at 8. The court further acknowledged "[t]here is a dispute in the evidence pertaining to whether cocaine is psychologically addictive." *Id.* at 10 (footnote omitted). The court nonetheless sustained the law, concluding that "[w]hile it is clear that cocaine is not a narcotic pharmacologically," *d.* at 16, "the word 'narcotic' in common usage includes cocaine," *id.* at 15, and "there is ample, respectable scientific evidence of harm or potential harm from the use of

cocaine to sustain the legislature's inclusion of cocaine in its classification of narcotics." *Id.* at 18.[1]

The UCSA, unlike the Alaskan statute, classifies cocaine as a non-narcotic, implying an awareness of the scientific distinctions advanced by the defendants in *Erickson,* including the one addressed to addiction. Accordingly, with widely available expert opinion questioning the addictiveness of cocaine within a few years of the District's voter initiative, we cannot say that the limitation of the addict exception to narcotics users—thereby excluding cocaine user—lacked a rational basis. We cannot invalidate a legislative enactment by making "a judicial determination of a debatable medical issue." *Brookins,* 383 F.Supp. at 1216.

It is true that, under the UCSA, the "Mayor shall place a substance in Schedule II," which includes cocaine, if the Mayor finds, among other things, that "[t]he substance has high potential for abuse ... and ... [t]he abuse of the substance may lead to severe psychological or physical dependence." D.C.Code § 33–515 (1986 Supp.). But this is not the equivalent of a legislative finding that cocaine itself, as a dangerous drug, is in one way or another addictive or, perhaps more to the point, as addictive as a narcotic drug.

While there is a legitimate, intensifying public out-cry over cocaine abuse, we have been given no record basis demonstrating that more recent scientific evaluations have confirmed cocaine's addictiveness since the date of the voter initiative. Nor have we been presented with an argument that new scientific evaluations make a previously rational addict exception now unconstitutional, without further legislative action.

It seems strange that the addict exception is available at sentencing when a convicted cocaine dealer proffers credible evidence that he or she distributed the drug to support a heroin habit, *see Banks v. United States,* 516 A.2d 524 (D.C.1986), but is not available when a convicted heroin dealer can prove that he or she sold the drug to support a cocaine habit. That, however, is what the voter initiative provided, and I cannot say under the circumstances that the distinction lacks a rational basis.

1. *See also United States v. Brookins,* 383 F.Supp. 1212, 1215 (D.N.J.1974) ("there is an honest scientific difference of opinion concerning the effects of cocaine"), *aff'd,* 524 F.2d 1404 (3d Cir.1975); *People v. Beasley,* 193 Cal.Rptr. 86, 89 n. 2, 145 Cal.App.3d 16, 22 n. 2 (1983) (cites February 1, 1983, scientific source calling cocaine "'most addictive drug' in popular use," as well as an earlier source stating that according

to one "longstanding medically accepted definition ... cocaine is not addictive").