Florie GASTON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 84–1017, 86–1079.

District of Columbia Court of Appeals.

Submitted July 6, 1987.
Decided Jan. 7, 1988.
As Amended on Denial of Rehearing
April 7, 1988.

Kenneth Michael Robinson, with whom Dennis M. Hart was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., with whom Michael W. Farrell, Carolyn J. Adams, and David Howard Saffern, Asst. U.S. Attys., were on brief, for appellee.

Before MACK and NEWMAN, Associate Judges, and GALLAGHER, Senior Judge.

MACK, Associate Judge:

Florie Gaston appeals from a judgment of conviction entered upon her plea of guilty to charges of possession with intent to distribute cocaine in violation of D.C. Code § 33–541(a) (1981). Appellant contends that the trial court erred (1) in failing to comply with the requirements of Super. Ct.Crim.R. 11 before accepting her plea, and (2) in refusing to grant her a hearing on her motion made pursuant to D.C. Code § 23–110 (1981). We find, in the circumstances here, that the failure of the trial court to apprise appellant of the maximum sentence provided by law and the applicability of the mandatory minimum sentence, before accepting her plea, is an omission which compels reversal and remand. We also find that the trial court erred in summarily denying appellant's motion to withdraw her guilty plea based on ineffective assistance of counsel and an inadequate Rule 11 inquiry. Were a remand not mandated by our treatment of the issues on direct appeal,[1] we would reverse and remand for a hearing on appellant's § 23–110 motion.[2]

**I**

In a four-count indictment appellant was charged with three counts of unlawful possession with intent to distribute phencyclidine (PCP), cocaine, and marijuana and one count of unlawful possession of valium. D.C. Code § 33–541(a)(1) & (d). On May 16, 1984, before Judge Ryan, appellant entered a plea of guilty to unlawful possession of cocaine with intent to distribute.[3] At the Rule 11 hearing, the trial judge informed Ms. Gaston that she had a right to trial by jury and a right to present witnesses in her defense, which she was giving up by pleading guilty. The trial court then asked appellant whether any promises had been made to her in exchange for her plea. At this point, the government interrupted to say that it was waiving "stepback" and reserving allocution with the exception that "we will not dispute any evidence by the defense that the defendant is eligible for the addict exception."[4] The court then attempted to clarify to appellant the nature of the government's promise, stating: "although they have retained the right to speak at the time of sentencing, they will not contest any evidence that you may have, that would make you eligible for the addict exception." The court also ascertained that no other promises or threats had been made to appellant, that she was not under the influence of narcotics at the time of entering the plea, and that she was satisfied with her attorney. The court thereafter determined her plea valid and voluntary.

At the sentencing hearing, appellant's counsel strongly argued that Ms. Gatson should be sentenced under the narcotic addict exception, stressing appellant's age, her poor health, and her extensive reliance

---

1. For purposes of jurisdiction (*see Lorimer v. United States,* 425 A.2d 1306 (D.C.1981)) we ordered this appeal held in abeyance pending the trial court's ruling upon the motion to withdraw the plea.

2. Appellant also contends on direct appeal that she was ineffectively represented by her counsel. As we reverse and remand on the grounds discussed *infra,* we do not reach this issue.

3. The government had agreed to dismiss the remaining counts of the indictment.

4. The reference is to the narcotic addict exception to the mandatory minimum sentencing requirement of the Uniform Controlled Substances Act.

on marijuana and cocaine following diminished relief from over-the-counter painkillers, which she had been taking for years. Despite the government's pledge not to contest the evidence that Ms. Gaston qualified under the addict exception, the government then stated: "Your Honor, the addict exception applies only to addiction to a narcotic controlled substance. Cocaine, marijuana and alcohol, none are narcotic controlled substances, therefore, the mandatory minimum would apply." Thereafter, the court concluded: "The legislature has spoken. Twenty months to five years. That's it."

Ms. Gaston noted an appeal from the judgment, and also filed a motion to withdraw her plea and vacate sentence pursuant to Super.Ct.Crim.R. 32(e) and D.C. Code § 23–110. Upon appellant's request, her direct appeal was held in abeyance until the trial court ruled on her collateral attack upon her guilty plea. Some eighteen months later, Judge Hannon denied, without benefit of a hearing, appellant's motion collaterally attacking her plea. After appellant noted her appeal from the denial of her motion to withdraw her plea, the two appeals were consolidated.

## II

Superior Court Criminal Rule No. 11 requires the trial court to apprise the defendant of the maximum sentence provided by law and any mandatory minimum sentence before accepting a plea. Specifically, Rule 11(c)(1) states:

*ADVICE TO DEFENDANT.* Before accepting a plea of guilty or nolo contendere, the Court must address the defendant personally in open court and inform

him of, and determine that he understands, the following:

(1) The nature of the charge to which the plea is offered, *the mandatory minimum penalty provided by the law, if any, and the maximum possible penalty provided by the law* . . . (emphasis added).

■ The trial court here did not comply with Rule 11(c)(1). It completely failed to apprise Ms. Gaston of the fact that she would be subject to the mandatory minimum and did not inform her of the maximum sentence provided by law. In fact, there was no discussion of her potential sentence whatsoever.[5]

■ *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) established the proposition that a defendant must know the direct consequences of a plea before he can plead intelligently. Consequences are direct when they have a definite and immediate effect on the range of defendant's punishment. *Cuthrell v. Director,* 475 F.2d 1364, 1365 (4th Cir.), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973). The government agrees that one of the "core concerns" the trial court must address when conducting a Rule 11 inquiry is whether he or she comprehends the direct consequences of the plea. *See McCarthy v. United States,* 394 U.S. 459, 466–67, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969). In failing to ascertain whether or not Ms. Gaston knew the direct consequences of her plea—to wit, a mandatory minimum stay in prison of twenty months to five years—the trial court clearly failed to address a core concern of Rule 11.[6]

---

5. Appellant also contends that the court violated Rule 11 by not informing her of the elements of possession with intent to distribute cocaine, stating that such inquiry would have revealed that appellant only used the drugs for her personal use. While the judge should have detailed the elements of the offense, here, the name of the charge incorporated its elements. Moreover, the government's detailed proffer of the evidence supporting the charge and appellant's acknowledgement that she had committed the offense were adequate to ensure the appellant understood the "nature of the charge."

6. The failure to make a Rule 11(c) inquiry in this situation is not the kind of Rule 11 violation that the Advisory Committee on Rules considered might constitute harmless error when it proposed the 1983 amendments adding subdivision (h). The Notes of the Advisory Committee illustrate a harmless error violation of Rule 11(c) by referring to the unpublished decision of the Court of Appeals for the Fourth Circuit in *United States v. Peters,* 588 F.2d 1353 (4th Cir. 1978), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1051 (1979) (affirmed without published opinion). In *Peters,* the judge failed to comply fully with Rule 11(c)(1) in that he did

We note that recent federal decisions have strictly construed the federal equivalent of Rule 11. " 'The policies behind Rule 11 are important and should be strictly enforced....' " *United States v. Gonzalez*, 820 F.2d 575, 578 (2d Cir.1987) (quoting *Del Vecchio v. United States*, 556 F.2d 106, 109 (2nd Cir.1977)). " 'In reviewing a district court's compliance with Rule 11, we can no longer accept as sufficient general statements or inquiries by the district judge on the theory that when construed in the light of surrounding circumstances they meet the rule's requirements. We now hold that, as a minimum, before accepting a guilty plea each district judge must personally inform the defendant of each and every right and other matter set out in Rule 11. Otherwise the plea must be treated as a nullity.' " *Id.* (quoting *United States v. Journet*, 544 F.2d 633, 636 (2d Cir.1976)).

The significance of understanding the consequence of entering a plea has likewise been stressed by this court. In *Hicks v. United States*, 362 A.2d 111 (D.C.1976), appellant, charged with one count of prison breach, argued that the trial court's failure to inform him of the consequences of his plea rendered his plea invalid under Rule 11. The court stated "we have no doubt that before accepting a plea of guilty the court should make certain the defendant understands that when sentence is ultimately imposed upon that plea the sentence must be consecutive to the sentence then being served. Our conclusion rests upon the facts that (a) Rule 11 expressly requires an 'understanding of ... the consequences of the plea' and (b) the *mandatory* consecutive nature of a sentence under this statute, which prevents the trial court from exercising discretion to impose a concurrent sentence, is a significant consequence of entering a plea." *Id.* at 113 (citations omitted). *Hicks* was, however, a postconviction collateral attack, and under the "manifest injustice" standard of Rule 32(e), the court found no showing of prejudice to

the defendant and no abuse of discretion in the trial court's refusal to set aside the judgment. The court based its finding on the fact that at the time he entered his plea, appellant conceded through his attorney that he understood the maximum penalty was five years. Since the penalty he in fact received was one to three years consecutive to the prior sentence, so that the total time of imprisonment appellant had to serve did not substantially exceed the maximum appellant was aware he might be required to serve, the court found reversal not required.

In contrast, the appeal before us is a direct appeal. The Supreme Court has found on direct appeal that "prejudice inheres in a failure to comply with Rule 11," *McCarthy v. United States, supra,* 394 U.S. at 471, 89 S.Ct. at 1173. *Cf. United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) (no basis for allowing collateral attack, brought two years after sentence, "to do service for appeal"). *See also United States v. Watson*, 179 U.S. App.D.C. 103, 548 F.2d 1058 (1977) (greater showing of injustice is necessary to obtain relief on motion to vacate sentence than is requisite on direct appeal). Moreover, unlike the situation in *Hicks*, the missing information at issue in the instant case was not simply whether a sentence was to be served consecutively. Appellant was not advised of the most basic information, the amount of time she would have to serve under the mandatory minimum and the maximum possible sentence. This case is also different from *Hicks* in two other basic respects. There is no evidence in this record indicating actual knowledge of the range of sentence to be imposed. Moreover, there is prejudice—not only inherent—but painfully obvious on the face of the record.

In fact, it is the context in which the failure to advise appellant of the mandatory minimum and maximum sentence occurred which compels reversal. The

---

not correctly advise the defendant of the maximum years of special parole possible, but did inform him that the minimum special parole term was three years, and the defendant there-

after was sentenced to fifteen years imprisonment and a three-year special parole term. Advisory Committee Notes at 451–52.

government argues that the facts in this case are analogous to those in *United States v. Kearney,* 750 F.2d 787 (9th Cir. 1984). In that case, even though the trial court had not specifically advised the defendant of the maximum and minimum penalties available, the court found that Kearney had actual knowledge of the sentencing consequences of his guilty plea because of the court's discussion with him about his status as a second offender. The government argues that because the trial court mentioned the plea bargain arrangement in which the government was not to contest the evidence regarding Ms. Gaston's eligibility for the addict exception, Ms. Gaston obviously had actual knowledge of the terms of incarceration for narcotics addicts and non-narcotics addicts under the Uniform Controlled Substances Act. We find *Kearney* inapposite, and we find the government's position untenable. Not only do we disagree that the reference to the addict exception indicates that appellant had knowledge of her possible sentence, we find the reference instead suggests that both counsel and appellant were quite confused as to the *direct* consequences of appellant's plea.

The fact that the government agreed to relinquish its right to dispute the evidence that Ms. Gaston was eligible for the addict exception makes the government party to promoting what appears to be an erroneous assumption on the part of appellant's trial counsel that appellant would most certainly be eligible for the addict exception to the mandatory minimum sentencing provision. The government thus did its part to "inculcate belief and reliance" on the notion that appellant would be eligible for the addict exception. *See United States v. Hammerman,* 528 F.2d 326, 330 (4th Cir.1975). Nor did the trial court act to prevent the resulting harm. The trial court heard the government's proffer. Given the state of this record, the trial court must have been put on notice that Ms. Gaston could not qualify under the addict exception.[7] The trial court has a duty to ensure that defendants do not decide to plead guilty based on manifestly wrong information. A central feature of the plea bargain here was the government's agreement not to dispute evidence of appellant's eligibility. Under these rather confusing circumstances, the court should at least have been alerted that a complete discussion of the potential consequences of the plea was necessary.

■ As this court recently observed: "By pleading guilty, an accused surrenders a whole panoply of constitutional rights. Because the consequences are so grave, Rule 11 lays down stringent procedural requirements regulating the entry of guilty pleas...." *Gooding v. United States,* 529 A.2d 301, 304–05 (1987) (footnote omitted). *See also Coleman v. Burnett,* 155 U.S. App.D.C. 302, 477 F.2d 1187 (1973), "[a] plea of guilty consummating a voluntary and intelligent choice of available alternatives has serious ramifications for the criminal proceeding. It operates as an admission of all material facts alleged in the count or counts pleaded to, and thus dispenses with the need to prove them. More important, however, is the effect of the plea beyond this service for the Government. '[T]he plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge.' " *Id.* at 308, 477 F.2d at 1193 (citations and footnotes omitted). The situation in the instant case closely resembles that in *Gonzalez, supra:*

> While it is possible that counsel considered the question of whether a cocaine addict is a narcotic addict an open one, the fact is that the Act specifically excludes cocaine and marijuana in its definition of "narcotic." Moreover, counsel for appellant did not appear to argue as if attempting to persuade the trial court of cocaine's similarity to a narcotic. Rather, counsel's argument focused on the element of addiction.

---

7. It is true that the case (in which this court definitively stated that a cocaine addict could not invoke the narcotics addict exception to the mandatory minimum sentencing provision of the Uniform Controlled Substance Act) was not issued until 1986, *see Backman v. United States,* 516 A.2d 923 (D.C.1986). However, the fact that this plea agreement was made prior to this time is not dispositive. *See infra* at 899–900.

[C]hance remarks about a court's giving some credit for a plea of guilty or about the importance to a court of a defendant's first offender status may have been misconstrued by appellant to be an assurance that he would not be sentenced to prison. This case presents precisely a situation in which a defendant in pleading guilty may well have mistakenly relied—for whatever reason: confusion, language barrier, stress—on a promise which a proper allocution could have uncovered. It is for this reason that it is important for the court to flush out any discussions that have occurred regarding the possible sentence a defendant may receive and to dispel any belief a defendant may have that any promise or promise-like representation made to him by anybody is binding on the court.

*Id.* at 579. The essence of appellant's claim of ineffective assistance of counsel was that she would not have entered the plea but for her counsel's assurances that she would qualify under the addict exception to the mandatory minimum. We cannot surmise otherwise but that appellant's decision to plead guilty was infected by counsel's erroneous assumption, and that her decision to plead was materially misinformed. While it is true that the standard for withdrawal of guilty pleas filed subsequent to sentencing is more strict than those filed before sentence has been im-

posed, we find appellant's claim meets the "manifest injustice" standard of Rule 32(e).[8] If, as appellant alleges, counsel promised her she would qualify for the addict exception to the mandatory minimum and she relied on his promise in agreeing to plead guilty, the plea was not knowing, intelligent, and voluntary. Under these circumstances, the failure of the trial court to abide strictly by Rule 11(c) and advise appellant of the mandatory minimum and maximum sentence she could be subject to, resulted in manifest injustice. Accordingly, the guilty plea must be vacated and the defendant given the opportunity to plead again to the indictment.[9]

### III

■ Appellant's principal contention on appeal from her collateral attack is that the denial of her motion to withdraw her guilty plea filed pursuant to D.C. Code § 23–110, without a hearing, was error. We agree.

Under D.C. Code § 23–110 (1981), a prisoner may move to vacate sentence at any time upon the grounds, *inter alia,* that his or her sentence was imposed in violation of the United States Constitution or is "otherwise subject to collateral attack." The trial court must hold a hearing *"[u]nless* the motion and files and records *conclusively* show that the prisoner is entitled to no relief" (emphasis added).[10] In *Pettaway v.*

8. The fact that appellant could not know until *after* sentencing that her counsel had misled her as to the applicability of the addict exception is another factor which militates in appellant's favor; it seems ludicrous to ask appellant to have filed a motion to withdraw her plea of guilty prior to the court's imposition of sentencing when, before that time, she had no reason to believe that plea had been entered based on erroneous information.

9. We conclude further that the government did not abide by the promise it made in the plea bargain with appellant. The government agreed not to contest any evidence that Ms. Gaston was eligible for the addict exception to the Uniform Controlled Substances Act. Presumably, the government would argue that, in simply stating that Ms. Gaston was addicted to cocaine and that the addict exception applied only to narcotic addicts, it was not technically disputing the evidence, but rather presenting a legal argument. However, this court has held that in determining whether a plea bargain has been

satisfied, the government and "[t]he court will construe any ambiguity against the government." *White v. United States,* 425 A.2d 616, 618 (D.C.1980); *accord Snipes v. United States,* 507 A.2d 159, 162 (D.C.1986). The government certainly did dispute Ms. Gaston's eligibility for the addict exception, and in a broad sense of the word, certainly disputed the evidence of her eligibility.

10. D.C.Code § 23–110(a)–(c) provides:

(a) A prisoner in custody under sentence of the Superior Court claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the court to vacate, set aside, or correct the sentence.

(b) A motion for such relief may be made at any time.

*United States,* 390 A.2d 981 (1978), this court declared:

> [O]nly when the motion, files, or other records contain data which belie a prisoner's claim, and such contradiction is not susceptible of reasonable explanation, does § 23–110 permit a court to deny a motion summarily. As a rule, therefore, in denying a § 23–110 motion without a hearing, the court should be able to say "that under no circumstances could the petitioner establish facts warranting relief." *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 1463, 36 L.Ed.2d 169 (1973).

*Id.* at 983–84 (emphasis added). Only three categories of claims do not merit hearings. "[P]alpably incredible" (though not merely "improbable") claims are one category of claims which may be summarily handled. *Machibroda v. United States,* 368 U.S. 487, 495, 82 S.Ct. 510, 514, 7 L.Ed.2d 473 (1962). A motion that makes assertions which, even if true, would not constitute a claim which entitles movant to relief is another category of motions which can be denied without a hearing. *Gibson v. United States,* 388 A.2d 1214 (1978). Lastly, motions based on claims that are "vague and conclusory" do not mandate a hearing under § 23–110. *Blackledge v. Allison,* 431 U.S. 63, 75, 97 S.Ct. 1621, 1630, 52 L.Ed.2d 136 (1977). *See generally Pettaway, supra,* 390 A.2d at 984 and cases cited therein. Appellant's motion to withdraw her plea of guilty under § 23–110 cannot be characterized as either "vague and conclusory," "wholly incredible," or, "even if true, not meritorious of relief."

In her § 23–110 motion, appellant contended that she was misinformed by her trial counsel concerning the availability of the addict exception in her case, specifically, that she "was informed by her trial counsel that she would not be subject to the mandatory minimum requirements of D.C. Code § 33–141 [sic] because of her addiction to cocaine." Appellant further alleged that the reason she entered her plea of guilty to one count of possession with intent to distribute cocaine was that counsel advised her that the addict exception would be available to her. Appellant thus contends that her counsel was ineffective because, by misleading her as to the consequence of her plea, counsel deprived her of an accurate basis upon which to make a knowing and intelligent decision.

Appellant clearly alleged that her counsel had assured her that she would qualify as an addict under the addict exception to the Uniform Controlled Substance Act. Moreover, there is compelling evidence in the record supporting appellant's claims. As discussed *supra,* the government, in plea bargaining negotiations, specifically promised Ms. Gaston that it would not contest any evidence that she was eligible under the addict exception to the Uniform Controlled Substances Act (and thus, would not be deemed automatically subject to the mandatory minimum sentencing provisions of the Act). Thus, appellant entered a plea of guilty in partial exchange for which the government agreed to relinquish the right to dispute any evidence presented by appellant in support of her claim of eligibility under the narcotic addict exception.

Events at the sentencing hearing further support appellant's claim that her counsel had assured her that she would not be subject to the mandatory minimum sentence of twenty months to five years incarceration. As discussed in Part II, *supra,* appellant's counsel strongly argued that Ms. Gaston should be sentenced under the addict exception. It is true that this court did not conclusively hold that cocaine addicts are ineligible under the addict excep-

---

(c) Unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting authority, grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto. If the court finds that (1) the judgment was rendered without jurisdiction, (2) the sentence imposed was not authorized by law or is otherwise open to collateral attack, (3) there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner, resentence him, grant a new trial, or correct the sentence, as may appear appropriate.

tion to § 33–541(c)(1)(2) of the Uniform Controlled Substances Act of 1981 (UCSA) until 1986, in *Backman v. United States, supra* note 7, 516 A.2d 923. Thus, it is possible that appellant's counsel could have informed her that he would *try* to get her considered under the addict exception, but that it was by no means a certainty that the judge would accept his argument. Counsel might have advised appellant to plead guilty on the chance that the court would agree with him that, even though the addict exception was specifically for persons addicted to narcotics, that Ms. Gaston should be allowed to invoke it even though she was not addicted to a narcotic substance, but to cocaine. His argument at the sentencing hearing belies this interpretation of events, however. While he did strenuously argue the fact of Ms. Gaston's substance addiction, he did not stress that cocaine should be considered on the same plane as a narcotic drug, which would have indicated his knowledge that he had to convince the judge that the statutory provision should be interpreted to include cocaine addicts. *See, e.g., id.* at 927 & 929 (concurring opinion, Ferren, J.) ("We have been given no record basis demonstrating that more recent scientific evaluations have confirmed cocaine's addictiveness since the date of the voter initiative. Nor have we been presented with an argument that new scientific evaluations make a previously rational addict exception now unconstitutional, without further legislative action."). Moreover, the court in *Backman* did not suggest that its holding that cocaine addicts could not qualify under the narcotic addict exception was in any sense a novel interpretation or a new rule. The court relied not only on the plain language of the definition of "narcotic" in the statute itself in finding that cocaine was not a narcotic for purposes of the exception, but observed that the legislative history of the UCSA showed that the Council consciously decided to remove cocaine from the earlier statutory listing of narcotic substances.

We note also that the "deal" which appellant received for pleading guilty indicates that the government was well aware that appellant's counsel believed the narcotic addict exception would apply to Ms. Gaston. The fact that one of the "benefits" Ms. Gaston received for pleading guilty was that the government would relinquish the right to contest evidence that Ms. Gaston qualified for the addict exception suggests that the government knew that appellant's counsel was operating under a misconception. Moreover, the government not only did nothing to correct his misapprehension, but it actually contributed to his erroneous assumption by agreeing to "give up" the right to contest the evidence that appellant was qualified under the addict exception. The concise, assured final statement the government made stating that cocaine was not a narcotic and that there was therefore no way in which Ms. Gaston could qualify under the narcotic addict exception belies ignorance of the fact that counsel's argument was most certainly a losing one.

In the instant case, the trial judge summarily denied the appellant's motion almost eighteen months after it had been filed, without a hearing. The order denying appellant's motion was cursory. It would appear that the trial court ruled on Ms. Gaston's motion solely on the basis of submissions to him by counsel, the government, and appellant's former attorney. Judge Hannon was not the original sentencing judge in Ms. Gaston's case;[11] he had no recollection of the proceedings and was not familiar with the actual events that transpired. In these circumstances, the lack of a hearing becomes especially significant. *See Session v. United States,* 381 A.2d 1, 2 (D.C.1977) (trial judge's ability to draw upon his own personal knowledge or recollection may be significant factor in reviewing trial court's refusal to grant hearing).

There is a presumption that a trial court presented with a § 23–110 motion should conduct a hearing. "Because § 23–110 is virtually a remedy of last resort, any question whether a hearing is

---

11. Judge Ryan sentenced Ms. Gaston on July 9, 1984. Pending motions cases before Judge Ryan were subsequently assigned to Judge Hannon. While the date of assignment does not appear in the record before us, we may infer, from a status report filed therein, that appellant's motion was before the second judge in November 1985.

appropriate should be resolved in the affirmative." *Miller v. United States,* 479 A.2d 862, 869 (D.C.1984). This court has held that trial courts should only refuse a hearing in extremely limited circumstances when the allegations include ineffective assistance of counsel. "Where the appellant alleges that the representation of his trial counsel was ineffective, the necessity for a hearing is increased because 'the record on direct appeal is ordinarily barren of the evidentiary facts which would either confirm or refute that allegation.'" *Id.* at 869–70 (quoting *Johnson v. United States,* 385 A.2d 742, 743 (D.C.1978)).

The government argues that appellant's motion falls within the third category of claims under § 23–110 deemed undeserving of hearings, those claims that, "even if true, would not merit relief." As stated in Part II, *supra,* we do not agree. We further note that § 23–110 provides that "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the prosecuting attorney, [and] *grant a prompt hearing thereon ...*" (emphasis added). Appellant had to wait eighteen months to be advised that the trial judge concluded that her motion to withdraw her plea did not have sufficient merit even to rate a hearing. This type of delay violates the spirit of Rule 11. Such delay not only hampered appellant's efforts to reach relief in this court; it may have even mooted her claims.

*Reversed and remanded.*

GALLAGHER, Senior Judge, concurring and dissenting:

I agree that appellant should have been granted a hearing on her motion to vacate her sentence filed pursuant to D.C. Code § 23–110. The evidence adduced at that hearing would afford the basis for determining whether her guilty plea may be withdrawn.

I do not agree with Part II of the court's opinion, as I would first await the outcome of the hearing to assess the circumstances surrounding the plea proceedings.