**In re Raymond B. THOMPSON, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 89–823.**

District of Columbia Court of Appeals.

Argued Sept. 18, 1990.

Decided Dec. 14, 1990.

R. Kenneth Mundy, Washington, D.C., for respondent.

Samuel McClendon, Asst. Bar Counsel, and Thomas E. Flynn, Bar Counsel, Washington, D.C., for the Office of Bar Counsel.

Before STEADMAN, FARRELL and WAGNER, Associate Judges.

PER CURIAM:

This case is before the court on a Report and Recommendation of the Board on Professional Responsibility (the Board) that respondent be disbarred for violating Disciplinary Rules 9–103(A) (failure to preserve identity of client's funds) and 1–102(A)(4) (dishonesty involving the intentional misappropriation of client's funds). In making its report and recommendation, the Board agreed unanimously with the Report of Hearing Committee Number Seven (the Hearing Committee). Respondent contends that (1) the Hearing Committee improperly relied upon non-expert opinion and hearsay; and (2) the record does not support, and the Hearing Committee failed to find by clear and convincing evidence, intentional misappropriation or dishonesty which would warrant disbarment. Respondent argues that the record supports at most a finding of misappropriation resulting from simple negligence and that a less-

er sanction should be imposed under the circumstances. We disagree and accept the Board's findings, conclusions, and recommendation as set forth in its report which is reproduced in an appendix hereto.

 Respondent's claim that hearsay and non-expert opinion was improperly admitted is raised for the first time with this court. The objection should have been raised before the Hearing Committee to preserve the issue for consideration. *See Hughes v. District of Columbia Department of Employment Services*, 498 A.2d 567, 570 (D.C.1985). In any event, the strict rules of evidence do not control professional responsibility hearings. D.C.Bd. Prof.Resp.R. 11.2. This rule is similar to the rules for other administrative proceedings. *See Martin v. Police & Firefighters Retirement and Relief Board*, 532 A.2d 102, 109 (D.C.1987). While we have held that an agency's "undue confidence in evidence that is too unreliable to justify the weight given to it" may warrant reversal (*id.* citing *Jadallah v. District of Columbia Department of Employment Services*, 476 A.2d 671, 676 (D.C.1984)),[1] this is not such a case. In this case, the Hearing Committee heard, without objection, the testimony of respondent's former client's new attorney that he did not feel that the termination of the personal relationship between respondent and his client prompted the client to pursue a claim for the proceeds of her personal injury claim. The witness gave as reasons for this conclusion the client's initial inquiry without revealing respondent's name, the client's caution in proceeding and her express statement that she did not want to cause respondent to lose his license.[2] Unlike *Jadallah*, the client-declarant testified and was available for cross-examination, and the statements elicited were made directly to the witness.

Under the relaxed rules of evidence in this administrative proceeding, the admission of such testimony and reliance upon it by the Hearing Committee and the Board as corroborative of the client's testimony was not error.

 We also reject respondent's second contention, that the record does not support, and the Hearing Committee failed to find by clear and convincing evidence that he intentionally misappropriated client funds or that his conduct was dishonest. Bar Counsel is required to prove disciplinary violations by clear and convincing evidence. D.C.Bd.Prof.Resp.R. 11.4. The Hearing Committee found that the burden was met that respondent used the client's settlement proceeds without her explicit consent and that such conduct was dishonest. It is respondent's contention that these findings do not eliminate the possibility that respondent had implied consent to use the funds or a reasonable basis to conclude that he did, given the nature of his personal relationship with the client. This position ignores that factually the Hearing Committee found that respondent availed himself solely of the use of a major portion of the funds, failed to state that there was an implicit understanding to that effect and admitted there was never any understanding at all between respondent and his client. The Hearing Committee rejected for want of evidentiary support the claim that the funds were jointly held for perpetuation of the relationship and rejected the defense that no attorney-client relationship existed due to the overwhelming evidence to the contrary. The Hearing Committee concluded that respondent never obtained explicit, or even implicit, permission to use his client's funds. These factual findings and conclusions are sup-

---

1. In *Jadallah*, this court rejected reliance upon hearsay within hearsay and also observed:

 It is one thing to hold that hearsay evidence is admissible at agency hearings, but quite another thing to say that the direct sworn testimony of a witness on a crucial fact can be effectively refuted by hearsay, *i.e.*, the statements of persons not produced as witnesses—and hence not subject to cross-examination—when the party relying on such statements is

 in a position to call the declarants to the stand.

2. The new attorney's testimony about his perception or opinion that the client was not vindictive in her pursuit of the funds and uncomfortable with a report to Bar Counsel would also be admissible under the relaxed evidentiary rules of administrative proceedings.

ported by substantial evidence which is summarized in the Board's report.

 Misappropriation of a client's funds is a serious violation of the Rules of Professional Responsibility for which disbarment is the appropriate sanction unless the conduct results from mere negligence. *In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc). There is no basis for concluding on this record that respondent falls within the exception. On the contrary, the record supports the Board's recommendation which is consistent with cases involving comparable misconduct. *See In re Wade*, 526 A.2d 936, 939 (D.C.1987); *In re Burton*, 472 A.2d 831 (D.C.1984).[3]

 The Board must accept the fact finder's findings if supported by substantial evidence on the record as a whole. *In re Evans, supra*, 578 A.2d at 1142. The same standard governs our review of the Board's findings. *Id.* Substantial evidence means enough evidence for a reasonable mind to find sufficient to support the conclusion reached. *Liberty v. Police and Firemen's Retirement Relief Board*, 410 A.2d 191, 192 (D.C.1979). Applying these standards, we conclude that the findings of the Hearing Committee, upon which the Board's findings are based, are supported by substantial evidence. We agree with the Board's recommendation of disbarment as the appropriate sanction for the conduct involved.

Accordingly, it is

ORDERED that respondent, Raymond B. Thompson, be and hereby is disbarred from the practice of law in the District of Columbia. This order shall be effective thirty days from the date of this opinion.

*So Ordered.*

---

**3.** Contrary to respondent's position, his conduct cannot be compared with the attorney involved in *In re Evans*, 578 A.2d 1141 (D.C.1990), in which the lesser sanction of suspension was imposed. In *Evans*, it was concluded that the attorney had a good faith objective belief in the propriety of his retention of an extra fee based on the factual finding that the attorney had actual consent from one heir to the fee and reason to believe, based on prior conduct, that the consent extended to the other heir. 578 A.2d at 1149. There is no such finding nor record support for a finding of a reasonable good faith belief in the propriety of the retention of all proceeds of the personal injury claim of the client in this case.

## APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket No. 333–87

IN THE MATTER OF RAYMOND B. THOMPSON, RESPONDENT.

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on the Report of Hearing Committee Number Seven ("Committee"), dated September 7, 1988. The Committee found that Respondent violated Disciplinary Rule 9–103(A), which requires that an attorney preserve the identity of funds and property of a client, and DR 1–102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. The Committee found that Respondent intentionally misappropriated funds due his client from the settlement of the client's claim for personal injuries. The Committee recommended that Respondent be disbarred.

Respondent represented Carrie O. Bell in a claim for personal injuries arising out of an automobile accident. The claim was settled for $13,000. Defendant's insurance carrier issued a check in that amount made payable to Ms. Bell and Respondent jointly. Respondent endorsed the check with his name and that of Ms. Bell. He deposited $12,500 in his trust account. The record contains no explanation as to what Respondent did with the remaining $500. Within the next two weeks, Respondent made three withdrawals from the account that reduced the balance to less than $200. *See* Bar Exhibits 7–12. Ms. Bell had $3,000 in medical bills outstanding at the time of the settlement. Those bills have never been paid. Ms. Bell retained other counsel and

sued Respondent in the Superior Court of the District of Columbia to recover her share of the settlement proceeds. She obtained a default judgment in the amount of $13,000, plus interest. Ms. Bell's counsel took the deposition of Respondent in aid of enforcement of the judgment. The transcript of the deposition reflects Respondent's agreement to settle Ms. Bell's claim for $10,500, $500 of which was to be paid within four days and the remainder, $10,000, within thirty days out of the proceeds of certain fee petitions then pending. *See* Bar Ex. 19. Respondent paid $500, but he failed to pay any part of the remaining $10,000.

Before the Hearing Committee, Respondent moved to dismiss the petition, arguing that service of the petition breached the confidentiality requirements of Rule XI, § 23. The process server engaged by Bar Counsel left the petition in an unsealed manila envelope on the windshield of an automobile parked in the driveway of Respondent's home. The Committee found that the process server left the petition where he did as a result of what the Committee found were Respondent's "attempts to evade lawful attempts at service of process." Report at 9–10.[1] Further, as the Committee noted, Respondent made no contention that service was inadequate or ineffective. *Id.* at 10 n. 3. In light of the Committee's findings, which are supported by substantial evidence in the record as a whole, the Board adopts the Committee's recommendation and denies Respondent's motion to dismiss.

In his answer to the petition, Respondent denied that there was an attorney/client relationship between himself and Ms. Bell. Rather, Respondent asserted that the relationship was wholly personal. It is undisputed that Respondent, who was married, and Ms. Bell were having an affair. Ms. Bell testified that regardless of her personal relationship with Respondent, she understood that Respondent was acting as her attorney on a contingency fee basis.

The Committee found that Respondent acted as Ms. Bell's attorney in connection with her claim for damages from shortly after the automobile accident in January, 1986, until August, 1987, when she retained other counsel. The Committee noted that on June 4, 1986, the Respondent wrote a letter of representation to the insurance carrier for the potential defendant stating that his office was representing Ms. Bell. *See* Tr. 117–18. In addition to informing the insurance carrier that he was Ms. Bell's attorney, Respondent later forwarded medical bills and reports to the carrier and negotiated with the carrier to settle Ms. Bell's claim for $13,000. The settlement check was made payable to both Respondent and Ms. Bell. Shortly after the settlement check arrived in the mail at Respondent's office in April, 1987, he deposited it into his trust account. Six days after the deposit, Respondent wrote a check to cash for $4,383, an amount which equals almost exactly a one-third contingency fee.[2]

The Committee further noted that despite several opportunities to do so, Respondent never denied that he had acted as Ms. Bell's attorney in any forum or at any time before he filed his answer to Bar Counsel's petition. Respondent allowed a judgment by default to be taken against him in Ms. Bell's civil action in which Ms. Bell alleged that Respondent had acted as her attorney. Respondent failed to contest the existence of an attorney/client relationship in any meeting, call, or correspondence

---

1. We note that where Bar Counsel is unable to effect service by delivering a copy of the petition to respondent personally or by registered or certified mail, he should seek authority from the Court of Appeals to employ other methods of service. Board Rule 7.2. In this case it was not necessary to seek direction from the Court because service was effected by certified mail. Report at 10.

2. Ms. Bell testified that Respondent told her he would take a one-third fee (Tr. 26). Respondent denied such a discussion (Tr. 111). *But see* Tr. 92 (Respondent testified that "if indeed that money was not money that both of us shared and spent together, I was entitled to like $4,333 of that amount."). *See also* Tr. 50–51 (Ms. Bell testified terms of representation were Respondent would pay the medical bills and take one-third of settlement as his fee).

with Ms. Bell's second attorney. He acknowledged the existence of his debt to Ms. Bell for the settlement proceeds during the post-judgment examination conducted by successor counsel. If, the Committee stated, there was anything further, short of a written retainer agreement, that Respondent could have done to convince an impartial observer of his status as attorney for Ms. Bell, the Committee was unaware what it might be. In that regard, the Committee noted that it was not incumbent upon the client, unskilled and untutored in legal practice, to insist upon a written contract of employment, particularly in the circumstances of this case. On this issue, the Board adopts the Committee's findings of fact, which are supported by substantial evidence in the record as a whole. The Board also adopts the conclusion of the Hearing Committee that an attorney/client relationship existed between Respondent and Ms. Bell.

There can be no dispute that by April 20, 1987 Respondent had caused the balance in his trust account to fall below the amount due Ms. Bell. Respondent claimed that most of the money was spent on trips to Atlantic City in furtherance of their affair. Ms. Bell denied she accompanied Respondent to Atlantic City. (Tr. 38, 47, 55–56). Respondent failed to produce any direct evidence that Ms. Bell was aware that the settlement proceeds were being spent for trips to Atlantic City or otherwise in furtherance of their affair.

Respondent did not contend that Ms. Bell expressly authorized spending the settlement proceeds as he asserted they were. While denying that he merely "assumed" Ms. Bell knew what was being spent, Respondent admitted that "there was no agreement as to how [the money] was to be spent and when it was to be spent." (Tr. 111). Ms. Bell denied she knew how the settlement proceeds were being spent. (Tr. 38, 45–46). Apparently arguing that Ms. Bell's consent could be inferred from her silence, Respondent contended that Ms. Bell did not object to Respondent's treatment of the settlement proceeds until she realized in August, 1987, that Respondent did not intend to leave his family. Ms. Bell testified that she waited four months after the settlement was paid in April, 1987, to complain against Respondent because Respondent told her the check would have to be reissued. (Tr. 41). In addition, Ms. Bell testified she delayed contacting new counsel because she did not want to imperil Respondent's career. (Tr. 41–42). The testimony of successor counsel was to the same effect. (Tr. 79). The Committee concluded that the record was insufficient to support Respondent's contention that Ms. Bell consented to Respondent's use of the money as though it belonged to them jointly.[3] On the contrary, the Committee found that the evidence of record was clear and convincing that Respondent knowingly withdrew funds belonging to Ms. Bell from his trust account without her consent. Report at 16, 19, 20, 26. It followed, the Committee stated, that Respondent thereby violated DR 9–103(A) and DR 1–102(A)(4) and misappropriated his client's funds. Report at 18, 19–20.[4]

As the Hearing Committee's thorough and thoughtful Report indicates, the Committee carefully weighed the evidence and assessed the credibility of the witnesses on the crucial question whether Ms. Bell consented to Respondent's use of the settlement proceeds. Our own review of the record has convinced us that the Committee's finding of fact that Ms. Bell did not so consent is supported by substantial evi-

---

**3.** Respondent was invited to submit any evidence he might have to support his contention of "joint use" with his post-hearing brief. (Tr. 145, 171). Respondent filed no post-hearing brief with the Committee. As noted later in the text, Respondent filed no brief with the Board.

**4.** The Committee rejected Bar Counsel's contention that Respondent violated DR 1–102(A)(4) by signing his client's name to the settlement check without her authorization. Report at 20. The Committee also concluded that Bar Counsel had failed to sustain his contention that Respondent falsely represented to Ms. Bell that the settlement check was no good by reason of the impending bankruptcy of the insured. Report at 20–21. Bar Counsel has not excepted to the Committee's findings and conclusions with respect to those allegations.

dence in the record as a whole. Given that fact as found by the Committee and the other undisputed evidence of record, the Committee's legal conclusions follow inexorably.

Turning to sanction, the Committee noted that Respondent's violations "are arguably the most serious of those with which an attorney can be held responsible," adding: "Respondent has misappropriated funds. In such cases disbarment usually, although not always, ensues." Report at 21, 26. *See In re Hines*, 482 A.2d 378, 386–87 (D.C.1984). Accordingly, the Hearing Committee recommended that the Respondent be disbarred. Respondent did not file a brief with the Board.

As the Court of Appeals stated in *In re Hines, supra,* at 386, in cases such as this one "disbarment will ordinarily be the sanction imposed by this court." In this case, there are no mitigating factors that would prompt the Board to deviate from the usual rule enunciated in *Hines* and followed repeatedly thereafter. *See, e.g., In re Buckley,* 535 A.2d 863, 866 (D.C.1987); *In re Hessler,* 549 A.2d 700, 701 (D.C.1987). In *In re Wade,* No. 83–141 (D.C. June 10, 1983), the Court disbarred an attorney who misappropriated the funds of his lover/client and then defended on the ground that his former lover had a vendetta against him. The same result should follow here. Accordingly, the Board recommends that the Court enter an order disbarring Respondent from the practice of law.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ GEORGE W. MILLER
 George W. Miller
 Vice Chairman

Dated: July 24, 1989

All members concur in the foregoing Report and Recommendation.