In re David G. DULANSEY, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 91–862.

District of Columbia Court of Appeals.

Argued Feb. 26, 1992.
Decided April 10, 1992.

Leonard H. Becker, Bar Counsel, with whom Wallace E. Shipp, Jr., Acting Bar Counsel at the time the brief was filed, and Elizabeth A. Herman, Asst. Bar Counsel, Washington, D.C., were on the brief, for Office of Bar Counsel.

R. Kenneth Mundy, Washington, D.C., for respondent.

Before STEADMAN, SCHWELB and KING, Associate Judges.

PER CURIAM:

Respondent, David G. Dulansey, challenges on appeal the Board on Professional Responsibility's recommendation that he be disbarred for his intentional misappropriation of client funds, which resulted in violations of DR 9–103(A) (commingling), DR 9–103(A) (misappropriation) and DR 1–102(A)(4) (dishonesty). The Board found that Respondent, while moonlighting as a private practitioner in violation of a policy imposed by his employer's general counsel, settled for $25,000 a personal injury claim that he had taken on a one-fourth contingent fee basis. Respondent deposited the settlement check into his personal checking account. Although respondent reimbursed some of the funds to his client in the ensuing months, he knowingly allowed his bank account balance to drop below the amount he owed to his client. In addition, respondent postdated one of the checks he provided to his client, which was dishonored for insufficient funds. Respondent took approximately four months to comply with his client's subsequent request for full payment, using borrowed funds to do so.

■ Respondent concedes that his disbarment would be consistent with *In re Addams*, 579 A.2d 190 (D.C.1990) (en banc) and other decisions of this court holding that disbarment will be the only appropriate sanction in "virtually all cases" involving intentional misappropriation of client funds. *Id.* at 191; *see also, e.g., In re Robinson*, 583 A.2d 691 (D.C.1990). He nonetheless challenges the Board's recom-

mended sanction, primarily [1] on the ground that disbarment would deprive him of equal protection of the laws in violation of the Fifth and Fourteenth Amendments to the United States Constitution. U.S. Const. amends. V, XIV.[2] Respondent does not allege that the sanction of disbarment for misappropriation of client funds impinges on a fundamental right or involves a suspect class. Hence, we apply to his claim the traditional rational basis standard of review, under which the challenged classification is "presumed to be valid and will be sustained if [it] ... is rationally related to a legitimate state interest." *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *see also Bankers Life & Casualty Co. v. Crenshaw,* 486 U.S. 71, 81, 108 S.Ct. 1645, 1652, 100 L.Ed.2d 62 (1988); *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) (per curiam). If the state's interest is legitimate, a classification's rational relationship to that interest "is not difficult to establish," *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 881, 105 S.Ct. 1676, 1683, 84 L.Ed.2d 751 (1985), as review is limited to ascertaining "whether any state of facts either known or which could reasonably be assumed affords support for it." *Backman v. United States,* 516 A.2d 923, 927 (D.C.1986) (citing *United States v. Thorne,* 325 A.2d 764, 766 (D.C.1974) (quoting *United States v. Carolene Products Co.,* 304 U.S. 144, 153, 58 S.Ct. 778, 784, 82 L.Ed. 1234 (1938))).

Respondent contends that the weighty presumption of disbarment [3] for attorneys who intentionally misappropriate client funds is not rationally related to this jurisdiction's interests in protecting client funds and promoting public confidence in the integrity of the legal profession because attorneys who commit other disciplinary violations involving dishonesty (violations that respondent views as more serious than intentional misappropriation) result in less serious sanctions. In rejecting this disparate treatment argument in *Addams* (albeit without respondent's constitutional overlay), we stated that:

> While we recognize that the sanction for intentional misappropriation of client funds will be harsh in comparison to sanctions for other disciplinary violations involving conduct some may view as roughly equivalent misconduct, our concern is that there not be an erosion of public confidence in the integrity of the bar. Simply put, where client funds are involved, a more stringent rule is appropriate.

*Addams, supra,* 579 A.2d at 198 (citations omitted).

A clear rational basis exists for this conclusion that attorneys who knowingly misappropriate client funds stand in a different position than attorneys who commit other acts involving dishonesty. As we also stated in *Addams,* the intentional misappropriation of client funds "strike[s] at the core of the attorney-client relationship" by undermining the public's faith that attorneys will fulfill their duties as fiduciaries with regard to the host of financial transactions that require a client to entrust funds to his attorney. *Id.* at 198–99.[4] For

---

**1.** In addition to his constitutional argument, respondent asserts that he should not be disbarred in accordance with *Addams* because *Addams* was wrongly decided on policy grounds. We are, of course, bound in this regard by our en banc decision in *Addams.*

**2.** The Fourteenth Amendment's guarantee of equal protection is not applicable to the District of Columbia. However, concepts of equal protection are inherent in the due process of law guaranteed to citizens of the District by the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *see also Wilson v. District of Columbia,* 338 A.2d 437, 438 n. 3 (D.C.1975).

**3.** The *Addams* court specifically refused to adopt a per se rule of disbarment for intentional misappropriation of client funds, indicating instead that "especially strong" mitigating factors would overcome the presumption favoring disbarment. *Addams, supra,* 579 A.2d at 191. In this case, the Board found no mitigating factors, and respondent has not challenged that finding in this proceeding.

**4.** Indeed, so important is the protection of clients' funds that the District has established a Clients' Security Trust Fund, whose purpose it is to "maintain the integrity and protect the good name of the legal profession by reimbursing ... losses caused by dishonest conduct of members

 

this reason, "[t]he appearance of a tolerant attitude toward known embezzlers would give the public grave cause for concern and undermine public confidence in the integrity of the profession and of the legal system whose functioning depends on lawyers." [5] *Id.* at 193.

As the Supreme Court stated in rejecting an Equal Protection challenge to a Georgia statute that enhanced the misdemeanor offense of child abandonment to a felony if the parent left the state after committing the offense, "[g]eneral rules that apply evenhandedly [6] to all persons within the jurisdiction unquestionably comply with th[e] principle" of equal protection. *Jones v. Helms,* 452 U.S. 412, 423, 101 S.Ct. 2434, 2442, 69 L.Ed.2d 118 (1981) (quoting *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 587, 99 S.Ct. 1355, 1366, 59 L.Ed.2d 587 (1979)). *See also Collins v. Johnston,* 237 U.S. 502, 509–10, 35 S.Ct. 649, 652–53, 59 L.Ed. 1071 (1915) (fourteen year sentence for perjury, which was much greater than maximum sentences for arguably more serious crimes, did not violate equal protection as long as sentence imposed did not exceed that authorized by law). This court has rejected similar equal protection challenges to legislative classifications in sentencing provisions. *See Gibson v. United States,* 602 A.2d 117 (D.C. 1992) (prior conviction exclusion for addict exception to mandatory minimum sentencing requirements of Controlled Substances Act not violative of equal protection); *Gethers v. United States,* 556 A.2d 201, 202 n. 1 (D.C.1989) (mandatory minimum for cocaine offense not violation of equal protection); *Backman v. United States,* 516 A.2d 923 (D.C.1986) (rational basis exists for excluding cocaine addicts from ex-

emption from mandatory minimum sentencing requirements of Controlled Substances Act). Because the distinction drawn in *Addams* similarly has a rational basis, respondent's disbarment does not deprive him of equal protection of the laws.

Accordingly, it is ORDERED that David G. Dulansey shall be disbarred from the practice of law effective thirty days from the date of this opinion.

*So ordered.*

---

of the District of Columbia Bar." D.C. Bar R. XII.

**5.** As we also noted in *Addams,* other state courts have concluded that disbarment generally is the most appropriate sanction for attorneys who misappropriate client funds. *See, e.g., People v. Radosevich,* 783 P.2d 841, 842 (Colo.1989) (en banc); *In re Carroll,* 127 N.H. 390, 503 A.2d 750, 751 (1985); *Attorney Grievance Comm'n of Maryland v. Cockrell,* 304 Md. 379, 499 A.2d 928, 935 (1985); *In re Wilson,* 81 N.J. 451, 409 A.2d 1153, 1155 (1979). Indeed, the American Bar

Association's *Standards for Imposing Lawyer Sanctions* ¶ 4.11, [Manual] Laws.Man. on Prof. Conduct (ABA/BNA) 1:801, 1:817 (1986), states that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

**6.** Respondent has not alleged discriminatory application of the sanction of disbarment for misappropriation of client funds.