In re Richard A. MICHEEL,
Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 90–SP–1363.

District of Columbia Court of Appeals.

Argued June 26, 1991.
Decided May 19, 1992.

Elizabeth A. Herman, Asst. Bar Counsel, Washington, D.C., for petitioner, the Office of Bar Counsel. Frederick B. Abramson, Bar Counsel at the time the brief was filed, and Samuel McClendon, Asst. Bar Counsel, Washington, D.C., at the time the brief was filed, were on the brief, for petitioner.

R. Kenneth Mundy, Washington, D.C., for respondent.

Before FERREN, TERRY and SCHWELB, Associate Judges.

TERRY, Associate Judge:

Bar Counsel charged respondent Richard A. Micheel with commingling funds,[1] misappropriating client funds,[2] and dishonesty.[3] A hearing committee found, after a hearing, that Micheel was guilty of commingling and misappropriation, but not dishonesty. Concluding that the misappropriation was the result of "simple negligence but no more," the hearing committee recommended that Micheel be suspended for two months.

The Board on Professional Responsibility accepted the hearing committee's conclusion that Micheel had commingled and misappropriated funds,[4] but did not engage in dishonest conduct. The Board concluded, however, that Micheel's misappropriation in this case was the result of recklessness rather than simple negligence. Relying on this court's holding that disbarment is the appropriate sanction in "virtually all" cases of misappropriation involving more than simple negligence, *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc), the Board recommended that Micheel be disbarred. We adopt the Board's recommendation.

I

The pertinent facts are undisputed. Mr. Micheel was retained by Roger Gregory, an acquaintance and fellow attorney, to represent him in connection with the purchase of a house in Silver Spring, Maryland. Micheel collected a total of $144,200.00 from various sources for disbursal at the settlement. These funds included checks for $127,700.00 from the mortgage lender, $9,000.00 from Mr. Gregory, and $7,500.00 from the seller as an adjustment in the price. Because he did not have a client trust account at that time, Micheel deposited all of these checks in his regular office checking account.[5]

1. At the time of respondent's conduct, attorney discipline in the District of Columbia was governed by our former Code of Professional Responsibility. Disciplinary Rule (DR) 9–103(A) of the Code provided in pertinent part:

All funds of clients paid to a lawyer or law firm ... shall be deposited in one or more identifiable bank accounts ... and no funds belonging to the lawyer or law firm shall be deposited therein....

As of January 1, 1991, the Code was replaced by the new Rules of Professional Conduct. Current Rule 1.15(a) contains a provision similar to DR 9–103(A).

2. Former DR 9–103(A), which requires funds of lawyer and client to be separately maintained, has been read as prohibiting misappropriation, *i.e.,* any unauthorized use of a client's funds by a lawyer to whom such funds have been entrusted. *See, e.g., In re Buckley,* 535 A.2d 863 (D.C.

1987). We assume, without deciding, that the new Rule 1.15(a) may be similarly construed.

3. Former DR 1–102(A)(4) provided in pertinent part:

A lawyer shall not ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Current Rule 8.4(c) contains substantially identical language.

4. In this court Micheel has conceded, both in his brief and at oral argument, that "commingling and misappropriation occurred."

5. Mr. Micheel explained to the hearing committee that he had previously maintained a separate bank account for client funds, but had closed it when he reorganized his practice.

From the funds entrusted to him, Mr. Micheel paid out $141,560.85 to the seller and the mortgage holder, leaving a balance of $2,639.15 still in his possession. That sum was intended to be paid to state and county authorities for taxes and other fees due as a result of the sale. Accordingly, Mr. Micheel wrote two separate checks on his office account. The first, in the amount of $1,317.44, was written on August 27, 1987, but was dishonored for insufficient funds on September 8, 1987.[6] The second check, in the amount of $1,345.00, was written on October 5, 1987, but was dishonored for insufficient funds on October 20, 1987.[7] Micheel's account was overdrawn by $59.71 at the time this check was presented for payment. The evidence also showed that between October 5 and October 20 Mr. Micheel bounced thirteen other checks drawn on this account and wrote numerous additional checks for business and personal expenses that did not bounce.[8] Eventually Mr. Micheel became aware of the shortage in his account and satisfied his obligations with two cashier's checks on December 29, 1987.

Micheel candidly admitted before the hearing committee that he was guilty of commingling and technically guilty of misappropriation, and the hearing committee and the Board found that he had committed these violations. He testified, however, that the shortages in his bank account were merely the result of his own poor accounting practices, not of any intent on his part to misappropriate client funds. The hearing committee credited this testimony and concluded that Micheel did not intentionally misappropriate the funds. Because the charge of dishonesty, in viola-

tion of DR 1-102(A)(4), was based on Bar Counsel's allegation that the misappropriation had been intentional, the hearing committee also found that Micheel was not guilty of conduct involving dishonesty.[9]

## II

■ The hearing committee and the Board found that Micheel had engaged in commingling and misappropriation, both violations of DR 9-103(A). Micheel does not challenge these findings, nor could he, for it is clear that his conduct constituted both commingling and misappropriation. Depositing client funds into an attorney's operating account constitutes commingling; misappropriation occurs when the balance in that account falls below the amount due to the client. *See, e.g., In re Hessler,* 549 A.2d 700 (D.C.1988). Misappropriation in such situations is essentially a *per se* offense; proof of improper intent is not required. *In re Harrison,* 461 A.2d 1034, 1036 (D.C.1983).

■ We held in *In re Addams* that "in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." 579 A.2d at 191; *see also In re Hines,* 482 A.2d 378, 386 (D.C.1984). In later decisions we have made quite clear that there is a presumption of disbarment in all cases involving misappropriation resulting from more than simple negligence. *See, e.g., In re Cooper, supra* note 9, 591 A.2d at 1297; *In re Godfrey,* 583 A.2d 692, 693 (D.C.1990); *In re Robinson,* 583 A.2d 691, 692 (D.C.1990); *In re Thompson,* 583 A.2d 1006, 1008 (D.C.1990). The principal

---

6. At the time Mr. Micheel wrote this check, the balance in his account was $758.52.

7. Although the two tax payments totaled $2,662.44, the balance remaining from the money he had received was only $2,639.15. He thus was obliged to pay out $23.29 more than he had received. Mr. Gregory admitted before the hearing committee that he had paid Micheel too little money to conclude the settlement. The hearing committee, noting that findings on this $23.29 shortfall were not necessary to the disposition of this case, said nothing further about it.

8. The record further reveals that Micheel bounced other checks after October 20. His bank statement shows that the bank dishonored a total of sixty-five checks for insufficient funds between October 10 and November 9, 1987.

9. The Board agreed with the hearing committee's conclusion that Micheel did not engage in dishonest conduct. "Before this court, Bar Counsel no longer contends that a finding of dishonesty was required ... and we do not overturn the Board's determination on this issue." *In re Cooper,* 591 A.2d 1292, 1295 (D.C. 1991).

issue in this case is whether Micheel's inadvertent misappropriation of his client's funds was the result of simple negligence or of reckless disregard of his duty to safeguard the funds.

The hearing committee specifically rejected Bar Counsel's contention that Micheel "had a disregard for the security of the settlement funds giving rise to an inference that he intended to use the funds [for his own benefit]." The committee credited Micheel's testimony that any misappropriation was the result of "sloppy book-keeping" and "bad accounting," rather than any intent to steal the client's funds. "This is not a case," the committee said, "where lassitude in record-keeping sank to the level of a reckless disregard for the state of the account." Rather, in the words of the hearing committee, Micheel "negligently allowed [his office account] to become overdrawn on one or two occasions (within weeks of each other), and immediately made restitution as soon as it was called to his attention." The committee, citing *In re Hessler, supra*, 549 A.2d at 701, concluded that Micheel's conduct involved "commingling and misappropriation through simple negligence, but no more...."

The Board adopted the hearing committee's conclusion that Micheel had commingled and misappropriated funds. It deferred to the committee's finding that Micheel did not intentionally misappropriate funds, noting that the committee had credited Micheel's testimony to that effect and that it could not overturn the committee's credibility determinations. The Board nevertheless disagreed with the hearing committee's conclusion that Micheel's conduct was the result of simple negligence. The Board held that on the undisputed facts, as found by the hearing committee, Micheel's misappropriation "was the consequence at least of reckless handling of client funds, not mere negligence or inadvertence." Relying on *In re Addams*, the Board therefore recommended disbarment.

III

■■■■ We must first decide what deference the Board owed to the hearing committee's conclusion that Micheel's conduct was the result of simple negligence. The Board is obliged to accept the hearing committee's factual findings if those findings are supported by substantial evidence in the record, viewed as a whole. *In re Thompson, supra*, 583 A.2d at 1008; Board on Professional Responsibility Rule 13.6. Micheel argues that the Board erred in rejecting the hearing committee's conclusion that his conduct was the result of simple negligence.

■■■■ Whether there has been negligence is ordinarily a question of fact for the fact-finder to resolve. *See, e.g., Montague v. Henderson*, 409 A.2d 627, 628 (D.C.1979). Thus it would appear at first glance that the Board owed deference to the hearing committee's finding of simple negligence, since a determination of negligence is a finding of fact. This court, however, at least in the administrative arena,[10] has drawn a distinction between "subsidiary findings of basic facts" and findings of "ultimate facts," which we have equated with conclusions of law. *Washington Chapter of the American Institute of Architects v. District of Columbia Department of Employment Services*, 594 A.2d 83, 87 (D.C.1991) (hereafter *"AIA"*), citing *Citizens Ass'n of Georgetown v. District of Columbia Zoning Commission*, 402 A.2d 36, 42 (D.C.1979). The administrative agency's reviewing body (in this case, the Board) must defer to the "subsidiary findings of basic facts," which include such things as credibility determinations, made by the agency's fact-finding body (the hearing committee). However, the Board owes no deference to the hearing committee's determination of "ultimate facts," which are really conclusions of law. *AIA, supra*, 594 A.2d at 87.

10. Under Rule XI, § 9(g) of this court's Rules *Governing the Bar*, we are required to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record"—the same standard governing our review of administrative agency findings. *See* D.C.Code § 1–1510(a)(3)(E) (1987).

This court was called upon in *AIA* to decide whether an agency's determination that an employee's resignation from her job was "voluntary" involved a question of "ultimate fact." The employee had signed a letter of resignation but later claimed that she had done so under duress. She later sought unemployment benefits from the Department of Employment Services, which an appeals examiner denied on the ground that she had voluntarily resigned. The Office of Appeals and Review (OAR) reversed the appeals examiner's decision, ruling that the employee's resignation was "involuntary." The employer contended in this court that the OAR had erred in failing to defer to the appeals examiner's finding that the resignation was voluntary. We noted that although the applicable regulations described the question of whether a resignation was "voluntary" as one of fact, the answer to that question had a "legal consequence": it affected the employee's eligibility for benefits. *Id.* at 86–87. We therefore concluded that whether a resignation was "voluntary" was really a question of "ultimate fact," *i.e.*, a question of law, on which the OAR owed no deference to the appeals examiner. *Id.* at 87.

In this case we hold, following *AIA, supra,* that the hearing committee's conclusion that Micheel's misappropriation was the result of simple negligence was a determination of "ultimate fact"—*i.e.*, a conclusion of law. The "finding" of negligence had a clear "legal consequence": it directly affected the severity of the sanction to be imposed for concededly improper conduct. The Board therefore owed no deference to the hearing committee's conclusion that Micheel was merely negligent.[11]

### IV

■ We hold that the Board was correct in its legal conclusion that Mr. Micheel was reckless. Because the Board focused only on Micheel's conduct regarding the second dishonored check, we likewise direct our attention to the evidence relating to that check and conclude that it was sufficient to support the Board's conclusion. *See* D.C.Bar R. XI, § 9(g).[12]

Mr. Micheel knowingly and intentionally commingled his client's funds with his own, even though he knew that to do so was improper. When Micheel wrote the second check on October 5, his account balance was insufficient to cover it. He testified that the funds were insufficient because of "bad accounting" on his part, and because "I don't reconcile [the account] the way I should, bad arithmetic on my part, I guess." Micheel testified further about his accounting practices:

Q. [by Bar Counsel]: Do you keep records concerning the money in your office operating account, or did you keep the checkbook for that account current?

A. How do you mean that?

Q. In terms of reconciling it by the check stubs. The balance that would be left, and so forth?

A. Well, I do—I truthfully did—do try to keep a running balance, but it has always been, unfortunately, that there may not be enough funds there to cover the checks.

In reaching its decision, the Board compared Micheel's case with two misappropriation cases in which this court concluded that the misappropriation was the result of simple negligence. In *In re Hessler, supra,* the attorney received a settlement check, which he deposited in his office operating account. After deducting his fee, the attorney sent a check for the balance to the client, but the client never received it. The attorney, after being made aware of the missing check, issued the client a new one. Although the second check cleared, the bal-

---

11. We note that whether someone has been negligent may also be a question of law in a tort case when the undisputed facts support but one conclusion. *Montague v. Henderson, supra,* 409 A.2d at 628.

12. This court will sustain an administrative agency's conclusion of law if (1) the agency has made findings of material "basic facts," (2) the conclusion of law ("ultimate fact") rationally flows from the underlying "basic facts" and is legally sufficient to support the agency's decision, and (3) substantial evidence supports the findings of "basic facts." *AIA, supra,* 594 A.2d at 87 n. 8 (citing authorities).

ance in the attorney's account had, between the time of the deposit of the settlement check and the issuance of the attorney's second check, fallen below the amount owed to the client. The attorney was therefore guilty of technical misappropriation, but the Board and this court concluded that the misappropriation was the result of "simple negligence, but no more." 549 A.2d at 701.

In *In re Harrison, supra,* the attorney commingled funds and allowed the balance in the account to drop below the amount owed to the client. This court concluded that his misconduct was the result of his reliance on "his account balance rather than his running balance," and therefore justified a lesser sanction than disbarment. 461 A.2d at 1036.

We agree with the Board that Mr. Micheel's conduct in the instant case was clearly worse than the attorneys' conduct in *Hessler* and *Harrison.* The attorneys in both of those cases at least tried to keep track of their clients' funds but were unable to do so accurately. The evidence in the instant case, however, shows that Mr. Micheel made no attempt to keep track of his client's funds, but indiscriminately wrote checks on the account at a time when he knew or should have known that the account was overdrawn. The Board's conclusion that Micheel misappropriated funds as a result of reckless disregard for the security of his client's funds rationally flows from the undisputed facts. We therefore uphold the Board's legal conclusion that the misappropriation in this case was the result of Micheel's recklessness.

### V

▪ In *In re Addams, supra,* we recognized a presumption "that in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." 579 A.2d at 191. We realize that disbarment in a case such as this may seem to be a harsh *sanction* when compared with sanctions for other violations involving arguably more egregious conduct. *See, e.g., In*

*re Sandground,* 542 A.2d 1242, 1243 (D.C. 1988) (three-month suspension for helping client to conceal assets during divorce proceedings); *In re Thompson,* 538 A.2d 247, 248 (D.C.1987) (one-year suspension for lying to federal immigration authorities); *In re Hutchinson,* 534 A.2d 919, 920 (D.C. 1987) (en banc) (one-year suspension for lying to federal authorities investigating securities law violations); *In re Reback,* 513 A.2d 226, 228 (D.C.1987) (en banc) (six-month suspension for filing falsified documents with the court). Overriding that seeming disparity, however, is "our concern ... that there not be an erosion of public confidence in the integrity of the bar. Simply put, where client funds are involved, a more stringent rule is appropriate." *In re Addams, supra,* 579 A.2d at 198. Micheel argues that our harsher treatment of attorneys in misappropriation cases violates the Equal Protection Clause of the Constitution. We recently rejected essentially the same argument in *In re Dulansey,* 606 A.2d 189 (D.C.1992), and we reject it again here.

Micheel does not and cannot contend that this court's disparate treatment of attorneys who misappropriate client funds impinges upon a fundamental right or involves a suspect class. That treatment is therefore presumptively constitutional and will withstand constitutional muster if it is "rationally related to a legitimate state interest." *Backman v. United States,* 516 A.2d 923, 926 (D.C.1986) (citations omitted); *accord, In re Dulansey, supra,* at 190. It cannot be seriously doubted that attorney discipline is a "legitimate state interest." *See Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2015–16, 44 L.Ed.2d 572 (1975) (states "have a compelling interest in the practice of professions within their boundaries").

▪ We made clear in *Addams* that the need to maintain "public confidence in the bar" justified our stricter treatment of misappropriation cases. *Addams, supra,* 579 A.2d at 197 (citation omitted). We cited with approval an opinion noting that "modest discipline [in cases of misappropriation] threatens public respect for the legal pro-

fession and will impair public confidence in the court's regulation of the bar...." *Id.* at 198, citing *In re Deragon,* 398 Mass. 127, 133–134, 495 N.E.2d 831, 834 (1986) (dissenting opinion). We concluded that because the relationship between attorney and client is and must be founded on complete trust,[13] a breach of that trust by a lawyer who misappropriates client funds "is so reprehensible, striking at the core of the attorney-client relationship, that the respondent must carry a very heavy burden [to rebut the presumption of disbarment]." *In re Addams, supra,* 579 A.2d at 198–199. Thus we hold that "[a] clear rational basis exists for [the] conclusion that attorneys who knowingly misappropriate client funds stand in a different position than attorneys who commit other acts involving dishonesty." *In re Dulansey, supra,* at 190. Accordingly, we reject Micheel's constitutional argument and adopt the Board's recommended sanction of disbarment.[14]

It is therefore ORDERED that respondent, Richard A. Micheel, shall be disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion.

SCHWELB, Associate Judge, concurring:

I remain of the opinion that this court's relentlessly unforgiving approach to misappropriation cases like this one is difficult to reconcile with what I view as substantially greater and sometimes excessive leniency towards violations involving far more dishonorable conduct. *See In re Addams,* 579 A.2d 190, 209–10 & nn. 16–20 (D.C.1979) (en banc) (Schwelb, J., concurring). In light of the decision in *Addams,* however, I am

constrained in this case to join the opinion of the court.

---

**13.** "[I]t is commonplace that the work of lawyers involves possession of clients' funds.... Whatever the need may be for the lawyer's handling of clients' money, the client permits it because he trusts the lawyer." *In re Wilson,* 81 N.J. 451, 455, 409 A.2d 1153, 1154 (1979), cited with approval in *In re Addams, supra,* 579 A.2d at 198.

**14.** There are no mitigating factors in this case sufficient to overcome the strong presumption of disbarment. *See In re Robinson, supra,* 583

A.2d at 692 (small amount of money involved, short period of time during which client was denied use of funds, lack of financial harm to client, and lack of prior disciplinary record held insufficient to overcome the presumption of disbarment recognized in *Addams* ).